[No. 16101. Department One. March 25, 1921.]

W. H. STIVERS, *Appellant*, v. CLAY ALLEN, *Respondent*.[1]

LIBEL AND SLANDER (10) — PRIVILEGED COMMUNICATION — JUDICIAL PROCEEDING. Defamatory words addressed by the United States district attorney to one suspected of a criminal offense, made in the presence of a secret service officer charged with the investigation of such offenses, are absolutely privileged.

Appeal from a judgment of the superior court for King county, Jurey, J., entered February 21, 1920, dismissing an action for damages for slander, upon sustaining defendant's demurrer. Affirmed.

*W. H. Stivers*, for appellant.

*Winter S. Martin* and *Arthur E. Carr*, for respondent.

PARKER, C. J.—The plaintiff, Stivers, commenced this action in the superior court for King county, seeking recovery of damages alleged to have been suffered by him from slanderous words spoken of and concerning him by the defendant, Allen, in the presence of one Jarrell. The defendant's demurrer to the plaintiff's complaint being sustained by the trial court, and the plaintiff electing to stand upon his complaint and

[1]Reported in 196 Pac. 663.

not plead further, final judgment of dismissal of the case was rendered against him, from which he has appealed to this court.

The allegations of the complaint, in so far as we need here notice them, are as follows:

"(1) That on the 27th day of June, 1917, the said defendant was the duly appointed, qualified and acting United States district attorney for the northern division of the western district of Washington, and had an official duty in reference to the subject-matter of the defamatory communication set forth in paragraph III hereof, and the third person mentioned in said paragraph had at said time a corresponding and like official duty, being then and there a secret service operative in the employ of the Treasury Department of the United States assigned to duty at Seattle, Washington.

"(2) That at all times herein mentioned the United States was at war with the Imperial German Government, and that the 'No-Conscription Circular' mentioned in the defamatory communication set forth in paragraph III hereof was and is the identical 'No-Conscription Circular' for issuing and propagating which on or about the 11th day of May, 1917, Hulet M. Wells and Sam Saddler were thereafter convicted in the United States district court for the western district of Washington, northern division, of the crime of seditious conspiracy and sentenced to imprisonment at hard labor for two years.

"(3) That on the 27th day of June, 1917, the said plaintiff personally appeared in the office of the said United States district attorney in the city of Seattle, Washington, in obedience to a telephoned and peremptory order from the said defendant, and that, after reminding and warning the said plaintiff that his admissions and responses might later be used against him in a criminal prosecution, the said defendant then and there, in the presence and hearing of a third person, to wit, one William R. Jarrell, wrongfully and wantonly spoke of and concerning and to the said plaintiff the false and defamatory words following:

'About midnight of May 12 last, or early in the morning of May 13, you were on the fourth floor of the P.-I. building with copies of the 'No-Conscription Circular' in your possession. Now, I want to know where you got them.'

"(4) That by uttering and publishing the false and defamatory words as aforesaid, the said defendant conveyed and intended to convey the meaning that the said plaintiff had committed a criminal offense against the United States and the crime of seditious conspiracy as defined and denounced in and by sections six (6), thirty-seven (37) and three hundred thirty-two (332) of the Criminal Code of the United States.

"(5) That the false imputation uttered and published by the said defendant as aforesaid was unnecessarily defamatory and was in excess and in abuse of the privilege of the occasion.

"(6) That the false and defamatory words were maliciously uttered and published by the said defendant as aforesaid, without reasonable or probable cause for belief that the said defamatory words were true and without any investigation as to the truth thereof, and in wanton disregard for and with reckless indifference to the truth of the matter and the rights, character and reputation of the said plaintiff; . . ."

Had respondent said to Jarrell, the Federal secret service officer, neither appellant nor anyone else being present or within hearing, that: "About midnight of May 12 last, or early in the morning of May 13, Stivers was on the fourth floor of the P.-I. Building with copies of the 'No-Conscription Circular' in his possession"; our problem would be exactly the same as that here presented; for it is elementary in the law of slander that:

"Defamatory words, uttered only to the person concerning whom they are spoken, no one else being present or within hearing, are not actionable, because it is necessary as an invariable rule that there be a publica-

tion of defamatory words to some one other than the person defamed to render the same actionable." 17 R. C. L. 315.

It seems plain, therefore, that we have here a case wherein one officer of the government used language in the presence of another officer of the government— no one else being present or within hearing, insofar as we are concerned with the question of the publication of such language—indicating his belief that appellant had in his possession a "no-conscription circular" under such circumstances as to suggest a violation of the Federal statutes providing for the punishment of seditious conspiracy; both officers acting together to a common end and being then and there charged with the duty of investigating and bringing to justice persons who might be guilty of seditious conspiracy under the Federal statutes. We are only assuming, for argument's sake, that the words complained of are actionable as slanderous, or could be so regarded upon proper innuendo pleading and proof.

Viewing the alleged slanderous words as being spoken by respondent to Jarrell, the secret service officer, and no one else hearing them— as, for present purposes, they must be viewed— we think they constitute an absolute privileged communication from respondent to Jarrell. They manifestly were not spoken with any thought that they should ever be given to the world, or that anyone else should ever learn of their utterance, other than appellant and Jarrell, the secret service officer. In *Shinglemeyer v. Wright,* 124 Mich. 230, 82 N. W. 887, 50 L. R. A. 129, we have a decision the reasoning of which we think is applicable to and controlling in favor of respondent here. That case involved a communication by Wright, a private citizen, to an officer, looking to the recovery of his bicycle

which he suspected of being stolen; in which communication he named Shinglemeyer as the suspected thief. Shinglemeyer sued Wright for damages for alleged slander and false imprisonment in connection therewith. Disposing of the branch of the case relating to the alleged slander by the communication of Wright to the officer, Justice Long, speaking for the court, said:

"The court was in error in admitting the above letter and the statements made by defendant to the two detectives High and Larkins in regard to the larceny of his wheel. These were privileged communications. They were introduced and admitted for the purpose of showing malice. The trial judge was in doubt as to their competency, but finally admitted them. Privileged communications cannot be used for that purpose. Defendant's property was stolen, and it was not only his privilege and right, but his duty, to give to the detectives, who, in this case, were specially appointed for the purpose, all information he had, and, if he had suspicions of any person, to state who the person was, and the reasons for suspecting him. Such communications are made in the strictest confidence, and are as sacred, in the eye of the law, as the communications between client and lawyer, or patient and physician. To be evidence of malice, these communications must in themselves have been malicious, and would, therefore, form the basis themselves for an action for slander. If this be the law, no person would be safe from prosecution in communicating to police officers, whose duty it is to examine into the case and hunt for the criminal, his suspicions, or statements which might tend to implicate a person. Public policy forbids the adoption of such a rule. These detectives were under legal, as well as moral, obligations to keep these communications secret. They were not made for publication, and the officers had no right to divulge them to others. It is very doubtful if these detectives could be compelled to disclose in court such privileged communications. Such officers, especially in large cities, are entitled to know from the citizen against

whom a crime has been committed all his suspicions and knowledge, both in regard to the person suspected, and also in regard to his character and habits. The defendant did not make these statements for repetition. He made them for the exclusive use and benefit of the trusted and sworn officers of the law. They should have been forever locked in their breasts, and never disclosed; otherwise, few persons would dare to disclose to an officer the name of a suspect, or anything they had learned about his character.''

There can be found decisions of the courts somewhat out of harmony with the views there expressed, but insofar as our attention has been called to such decisions, and insofar as we have been able to discover by an independent investigation, they all relate to communications made by private citizens to officers touching the question of the guilt of some person of an offense. No decision has come to our notice—and we think there are none—wherein it has ever been held that the expressions of opinion by one officer to or in the sole presence of another, as in this case, are actionable slander under any circumstances. We think the above quoted observations made by the learned justice in speaking for the Michigan court are more peculiarly applicable to a case of the nature we here have, even than to communications made by a private citizen to an officer. The following decisions, while not directly in point, contain observations in harmony with the conclusion we here reach: *Kimble v. Kimble,* 14 Wash. 369, 44 Pac. 866; *Stewart v. Major,* 17 Wash. 238, 49 Pac. 503; *Gardner v. Anderson,* Fed. Cas. No. 5,220; *Beshiers v. Allen,* 46 Okl. 331, 148 Pac. 141, L. R. A. 1915E 413.

In view of the circumstances alleged in the complaint, under which the alleged slanderous words were spoken, we must presume that, but for appellant himself giving them to the world when he brought this

action, no one but he and Jarrell would ever have known of their utterance. As spoken to him, the words were not actionable. As spoken to or in the presence of Jarrell, the words were absolutely privileged.

The judgment is affirmed.

HOLCOMB, FULLERTON, BRIDGES, AND MACKINTOSH, JJ., concur.