## McAlister & Company v. Jenkins, et al.

(Decided May 28, 1926.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Libel and Slander—Communication is Absolutely Privileged, where Pertinent to Inquiry and Made in Discharge of Duty Under Express Authority of Law, by or to Heads of Executive Departments.—Communications are absolutely privileged, when made in discharge of duty under express authority of law, by or to heads of executive departments, if pertinent to inquiry under investigation.

2. Libel and Slander—Real Estate Commission, which has Duty to Conduct Hearings, and Determine on Revocation of Licenses of Real Estate Salesmen, is Administrative Body with Quasi Judicial Powers, and its Communications are Absolutely Privileged (Acts 1924, c. 138).—Real estate commission, appointed under Acts 1924, c. 138, which has the duty to hear complaints, conduct hearings thereon, hear evidence adduced, and determine finally on revocation of real estate salesmen's licenses, is administrative body charged with quasi judicial powers, and its communications are absolutely privileged.

3. Libel and Slander—Finding of Real Estate Commission, which Revoked Licenses of Plaintiff's Real Estate Salesmen, Stating Plaintiff was Morally Responsible for Their Acts Held Pertinent to Inquiry and Absolutely Privileged (Acts 1924, c. 138).—Finding of real estate commission, appointed under Acts 1924, c. 138, which revoked licenses of plaintiff's real estate salesmen and stated that plaintiff was morally responsible for their acts and that as head of the firm he should know the methods employed by his salesmen, held pertinent to inquiry and absolutely privileged.

BURWELL K. MARSHALL for appellant.

ALLEN P. DODD for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellees were the three members of the real estate commission for the city of Louisville, appointed under the provisions of the act of the General Assembly of 1924, being chapter 138, page 468 of the Acts of that year.

Under the provisions of that act there was filed before the commission, composed of the three appellees, a complaint against G. H. McAlister (doing business as McAlister & Company) and two of his salesmen concerning their conduct in two real estate transactions in Louisville. After notice to the persons against whom the complaints were lodged, as required by the provisions of the act, a hearing was had, and the commission in a finding signed by each of its members found McAlister not guilty under the terms of the statute, but in each instance found his saleman guilty of certain improper practices designated in the act, and revoked their licenses. There was, however, appended to this finding certain other language referring to McAlister which forms the basis of this action for libel.

It is alleged that certain affidavits were filed by named individuals with the real estate commission wherein it was stated that such parties had employed the plaintiff to sell for them certain real estate, and that plaintiff's salesmen had obtained from the complainants a contract wherein plaintiff was authorized to sell such property for a designated period, and that the plaintiff's salesmen had made certain misrepresentations to the complainants and had been guilty of certain improper practices in the conduct of the business mentioned; and that accordingly the defendants caused notices to be given to plaintiff and his salesmen that the commission would hold an investigation of such charges and requiring them to appear and defend. It is alleged that defendant Jenkins knew that certain statements contained in the affidavits so filed before the commission were false, and that he had so informed each of his codefendants, and that therefore each of the members of the commission at the time they heard the complaint knew of the falsity in the affidavits. But notwithstanding such knowledge upon their part, it is alleged that on the 8th of December, 1924, they formed a conspiracy among themselves to falsely and maliciously report facts about plain-

tiff which they knew to be untrue for the purpose of injuring him in his good name and business standing.

That in the finding or report so made by defendants upon the hearing of each of the charges against plaintiff and his salesmen they found or reported that plaintiff had not been proven guilty of any violation of the real estate statute involved, but that each of his salesmen was guilty of certain improper practices designated in the act, and their licenses were each revoked. The plaintiff then alleges that in such finding or report, after finding the plaintiff not guilty of the charges, and after finding each of his said salesmen guilty of certain improper practices prohibited by the act, the board and its individual members proceeded further to say of and concerning the plaintiff that

> "While the commission is unable from the evidence submitted to find G. H. McAlister guilty of violation of any of the provisions in clause 8 of the real estate license law, yet it feels that he is morally responsible for the acts of his salesmen in selling real estate, and while he testified that he did not know of the transactions which took place between the complainants and his salesman, E. I. Rawles, yet we consider it was his duty as the head of the firm to know, and he should know the method employed by his salesmen in selling and listing property through his office."

The same language is used in the finding or report upon the hearing of the other complaint, and the allegation is that such statements were falsely and maliciously made by the defendants, and that after finding the plaintiff not guilty, and after finding his said salesman had been guilty of misrepresentation and making a false promise, they falsely and maliciously used the quoted language as to plaintiff, knowing the same to be false and wholly without foundation and contrary to the evidence submitted on the hearing; and that said statements were made solely for the purpose of injuring plaintiff and to carry out the unlawful conspiracy formed by defendants to injure him in his business. That the language used in each of the findings was false and defamatory, and that each of defendants knew that the statements were false and without foundation at the time they were so made, and that defendant Jenkins for the

malicious purpose of doing the plaintiff greater injury gave out the alleged information contained in the reports to the newspapers for publication.

The court below sustained a demurrer to this petition upon the ground that it was absolutely privileged, and the correctness of that view is the only question presented on this appeal.

It seems to be conceded on the one hand that if the matter complained of was absolutely privileged, and pertinent to the inquiry, that the demurrer was properly sustained; and it appears to be conceded on the other that if the matter was only conditionally privileged, in view of the allegation of express malice, the demurrer should have been overruled.

The plain purpose of the act creating the commission was to regulate and supervise the business of real estate agents and their employees in cities of the first and second class, and to that end it creates a commission and confers certain powers upon that body and imposes upon its members the discharge of certain duties with reference to such real estate agents and their employees. It is, as said by appellant's counsel, an administrative body, but the act expressly imposes upon its members the exercise of certain duties which we shall see demand of them the exercise of discretions which make their duties in some respects quasi-judicial. After providing that no one shall act as a real estate broker or salesman without first having procured a license so to do, and after defining what a real estate broker and a real estate salesman are within the meaning of the act, it creates the commission of three to be appointed by the Governor, and prescribes their qualifications and term of office, their compensation, etc. And then in section 4 provides that a license shall only be granted to persons bearing a good reputation for honesty, truthfulness and fair dealing, and who are competent to transact the business in such manner as to safeguard the public interest. It provides that each applicant for a broker's license shall apply in writing to the commission, and that his application shall be accompanied by certain recommendations certifying to his reputation for honesty, truthfulness and fair dealing as well as competency; and that his application shall be accompanied by a bond of $1,000.00 with good surety, conditioned that he shall conduct his business in accordance with the requirements of the act.

In addition to all this it provides that the commission may require such other proof as shall be deemed desirable in the interest of the public as to the honesty, truthfulness, integrity and competency of the applicant. It then provides that the commission, after an application in proper form has been made,

"Shall, before refusing to issue a license, set the application down for hearing and determination as hereinafter provided in section 9." (Section 6).

Then in section 8 it is provided:

"The commission may upon its own motion, and shall upon the verified complaint in writing of any person, provided such complaint, or such complaint together with evidence, documentary or otherwise, presented in connection therewith, shall make out a *prima facie* case, investigate the actions of any real estate broker or real estate salesman, or any person who shall assume to act in either such capacity within this state, and shall have the power to suspend or to revoke any license issued under the provisions of this act, at any time where the licensee has by false or fraudulent representation obtained a license, or where the licensee in performing or attempting to perform any of the acts mentioned herein is deemed to be guilty of, (a) making a substantial misrepresentation, or (b) making any false promise of a character likely to influence, persuade or induce,"

and then specifies eight other reasons for the revocation of a license.

Section 9 provides that the commission shall before denying an application for license, or suspending or revoking any license, set the matter down for hearing, and notify in writing applicant or licensee of such charges ten days prior to the date of the hearing, and "shall afford such applicant or licensee an opportunity to be heard in person or by counsel." It also provides that if the applicant or licensee be a salesman, the commission shall notify the broker employing him through the mail by registered letter. It further provides:

"the hearing of such charges shall be at such time and place as the commission shall prescribe,"

and that both the commission and any party to the hearing shall have the right to the attendance of witnesses. It provides:

> "If the commission shall determine that any applicant is not qualified to receive a license, a license shall not be granted to said applicant, and if the commission shall determine that any licensee is guilty of a violation of any of the provisions of this act, his or its license shall be suspended or revoked. The findings of fact made by the commission, acting within its power, shall in the absence of fraud be conclusive."

So we have imposed upon the members of this commission by express provisions of law, the duty to hear complaints, the duty to fix the time of hearing, and the duty to notify in writing the person or persons whose rights may be affected by the hearing. We have imposed upon them the duty to conduct such a hearing and to hear the evidence adduced by either party, and finally to determine after hearing such evidence what the rights of the parties are with respect to the subject matter involved, and we have a solemn legislative declaration that their findings of fact upon such hearing shall be conclusive.

From these provisions it is clear that the members in holding such a hearing not only by express legislative authority are the agents of the state for that purpose, but they necessarily in the discharge of the express duty so imposed upon them, exercise in some measure quasi-judicial functions.

While under our Constitution the General Assembly has no power to create a court other than those specifically mentioned, yet in many instances its action in creating administrative bodies with certain discretionary powers has been upheld, notably its act creating the Workmen's Compensation Board, in which act the language as to its findings of fact is essentially the same as with reference to the commission here involved.

In determining whether or not a particular occasion or a certain communication made upon such an occasion is absolutely privileged or only conditionally privileged, there is sometimes a very narrow line of demarcation; but this court in the case of Tanner v. Stevenson, 138 Ky.

578, after a lengthy and learned discussion, in reference to the cases where the absolute privilege applies, said:

> "But the cases to which this immunity from liability applies are confined to judicial and legislative proceedings, matters involving military affairs, and communications made in the discharge of a duty under express authority of law by or to heads of executive departments of state."

Likewise in the case of Sebree v. Thompson, 126 Ky. 223, this court, after holding that a witness while testifying under oath in court to matter pertinent to the issue involved in the action, although he may have made false and slanderous statements affecting the character of another, was protected by the absolute privilege and not liable in damages for his false and slanderous statements; but in passing upon whether or not his statements as a witness were pertinent, in quoting from Mr. Cooley on Torts, said:

> "In determining what is pertinent much latitude must be allowed to the judgment and discretion of those who are entrusted with the conduct of a case in court."

It is true that the class of absolutely privileged communications are comparatively few and that the courts have evinced a purpose not to extend that class, and yet in sound reason and logic it cannot be said it should not apply to a public official upon whom there is imposed a specific duty by law to act in a given matter. The imposing of such duty presumably authorizes him to act with perfect freedom and without fear of personal consequences. If in the discharge of a duty imposed by law a public official clothed with quasi-judicial powers may have suspended over his head continually the threat of libel suits, it is apparent that his official conduct would be tempered by and tainted with the fear that he might be unjustly subjected to such actions. The policy of the law is, therefore, and the reason of the rule is, that although upon rare occasions judges and other public officials upon whom are imposed by law judicial or quasi-judicial duties may maliciously slander or calumniate in the exercise of their authority, it is better that they should be protected upon such occasions by this absolute privilege than that the great body of such officials in the conscientious exercise of their duties should be hampered

continually by the threat of such civil actions. Obviously one discharging such duties, except for such exemption, might perform them in a timid, time-serving or inefficient manner. It is a rule, therefore, of public policy, not designed to protect the malicious official from the consequences of his wrongful act, but to protect the whole public from weak and vacillating public service by those upon whom such duties are imposed by law.

According to the English rule the absolute privilege is more vigorously enforced than in most of the states of this country; but in Sebree v. Thompson this court, after tacitly approving the English rule, said that the absolute privilege should be restrained by some limit, and that a party or counsel in the trial of an action should not be permitted to avail himself of his situation to gratify private malice by uttering slanderous expressions against a party, witness or third person,

> "which have no relation to the cause or subject matter of the inquiry."

Analyzing, therefore, the opinions in Tanner v. Stevenson and Sebree v. Thompson, we conclude that the rule in this state is that the absolute privilege applies wherever the communication is made in discharge of a duty under express authority of law by or to heads of executive departments, provided the libelous communication is pertinent to the inquiry under investigation at the time.

Here we have an administrative body charged with the exercise of quasi-judicial powers and the duty imposed upon its membership to take certain action after exercising those quasi-judicial functions and the very reason of the rule requires they should be exempt from such actions. The remaining question is whether the latter part of the order entered by the commission was pertinent to the inquiry.

Possibly in a strict sense it may be said that the latter part of that order or finding was not necessary to the determination of the question involved; but it cannot be said that those statements had no relation to or were not pertinent to the thing under investigation. The very thing being inquired into involved the manner in which appellant transacted his real estate business, a business in which the General Assembly assumed the public was interested, and the very business which the

commission was appointed to regulate. Its order, therefore, in its entirety had relation to and was plainly pertinent to the manner in which that business was being conducted; and doubtless was intended to be not only an admonition to appellant, designed to bring about a more careful and more businesslike administration of his business, but probably also designed to have a like effect upon others engaged in similar business.

Our conclusion, therefore, is that inasmuch as the members of the commission were expressly required by law to conduct this hearing and make a finding, they were entitled to the exemption afforded by the rule of absolute privilege. Spalding v. Vilas, 161 U. S. 483. In the note to Kemper v. Fort, 123 A. S. R. at page 646 will be found authorities showing where similar quasi-judicial bodies, or persons exercising such functions have been adjudged to be entitled to the absolute privilege, such as, (1) inquiries and complaints having for their purpose the disbarment of attorneys, whether the proceedings take place in court or not, (2) proceedings in military tribunals, (3) proceedings before the Interstate Commerce Commission, (4) proceedings before the Governor of a state for the extradition of an alleged fugitive from justice.

Judgment affirmed.

Whole court, except Judge Dietzman, sitting.