## Catron v. Jasper.

December 20, 1946.

R. L. Brown and Joe S. Feather for appellant.

Gladstone Wesley, W. R. Jones and R. C. Tarter for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the time of the happening of the facts upon which this action is based the appellee, J. B. Jasper, was the sheriff of Pulaski County, and John Taylor was a deputy sheriff, while appellant was a farmer living about two miles from Somerset, Kentucky, on a farm with his wife and two children. At the same time local option was in force throughout the county and had been for several years.

On August 16, 1945, appellee, and defendant below, in conversation with his deputy, John Taylor, stated to the latter, "Liquor is being stored on the premises of John Catron and is now being illegally sold thereon." Later Taylor procured a search warrant for the premises occupied by Catron which on search of what appears to be only the residence of Catron, no intoxicating liquor was found. Thereafter and on January 10, 1946, Catron filed this slander action in the Pulaski circuit court against Jasper, the sheriff of the county, charging that "the defendant falsely, wilfully and maliciously spoke," the statement made to his deputy, Taylor, intending thereby to accuse plaintiff of the crime of selling intoxicating liquor in violation of the local option law then in force in the county, KRS 242.010 et seq., whereby his reputation was injured, causing him to suffer great and irreparable mental distress and pain to his damage in the sum of $5,000, for which amount he prayed judgment.

Defendant demurred to the petition, but it does not appear to have been acted on by the court, and while it was pending defendant answered admitting the speaking of the words, the subsequent procurement of the search warrant by Taylor and the fruitless search thereunder of plaintiff's residence. But it nowhere appears in the record by pleading or proof of plaintiff—which was the only testimony heard at the trial and given only by himself and his wife—that the entire premises outside of the residence were searched at the time the search warrant was executed. The answer affirmatively stated that plaintiff was, and had been for years prior to the speaking of the words by defendant, a notorious bootlegger and that he, defendant, had theretofore searched plaintiff's premises more than once and found liquor therein, all of which was after local option had been adopted in the county.

Defendant further alleged facts clearly indicating that, notwithstanding plaintiff had theretofore been charged with the same offense and plead guilty thereto, he, after satisfying the judgment of the court on that conviction, continued to commit the same violations, which became so notorious as to amount to a nuisance. Plaintiff, however, denied that portion of the answer in general language, but when giving his testimony he made

no specific denial thereof. Before the trial, however, defendant amended his answer pleading absolute privilege, based upon the fact that at the time he spoke the alleged slanderous words both he and Taylor, the only person to whom they were spoken, were the officers above stated and each of them was charged with "investigating all breaches of penal laws of the Commonwealth of Kentucky including violations of the local option law," and that at that time he had reasonable grounds to believe and in good faith did believe that the words he spoke to his deputy were true, and were made in good faith and without malice and spoken by him under an absolute privilege which he pleaded as "a complete bar to plaintiff's cause of action."

The trial was had before a jury on June 10, 1946. Plaintiff and his wife testified in his behalf and then announced that he had no other proof to offer; whereupon defendant moved that the jury be directed to find a verdict for him which was sustained and verdict rendered accordingly, followed by judgment dismissing the petition from which plaintiff prosecutes this appeal.

As presented to this court the only question for determination is, whether or not the defense of absolute privilege is available to defendant under the facts and circumstances of this case. Counsel for appellant has furnished us no authorities applicable to the *precise* facts here involved, and counsel for appellee has furnished us with only one case which completely parallels the facts of this case. When we speak of "the facts of this case" we refer to the situation here presented, which is, that the alleged slanderer was a peace officer charged with the duty of enforcing criminal and penal laws within his jurisdiction, and the only person to whom he uttered the alleged slander was also a peace officer possessing the same duties under the law. There are plenty of cases where a civilian speaks to an officer concerning matters within the latter's jurisdiction, and where the courts held that under such circumstances the communication was only a specially privileged one, but not necessarily *an absolute one*. Perhaps the same rule might apply where the utterer of the words was an officer whose duties concerned the subject matter of the communication made by him to a private citizen, but this case presents neither of those situations, it being, as we

have said, where an officer speaks to another officer, each of them having similar duties to perform, and the spoken words concern and relate to the performance of such duties by each of them.

The single case to which we are referred by counsel for appellee is Harwood v. McMurtry, D. C. Ky., 22 F. Supp. 572, an opinion by Judge Church Ford, U. S. District Judge for the Eastern District of Kentucky. The learned judge who rendered that opinion in stating the question presented to him for decision, said:

"The question raised by the demurrer to which the parties, in their briefs, especially direct the court's attention, is whether the law affords a public officer absolute protection and immunity from liability on account of a false statement maliciously made in a communication to his superior when such statement is made in the course and discharge of official duties and is pertinent and relevant thereto."

The learned judge then cites a number of others rendered by Federal courts in which he says that: "the protection of the rule (absolute privilege) has been further extended so as to reach and include subordinate government officers when engaged in the discharge of duties imposed upon them by law." (Our parenthesis.) The opinion then says:

"The seriousness of affording such protection, under the cover of which officers of the government, under the guise of official duty, may make a false and malicious statement subjecting another to scorn and ridicule with ensuing damages, without the injured party being able to secure legal redress, cannot be doubted. These considerations, however, are held to be outweighed by an imperative public policy that perfect freedom in the discharge of public duty is essential to the maintenance of efficient public service and must be preserved without restraint. Upon this ground the question seems to have been settled. It is clearly pointed out that when an officer departs from official duty and indulges in defamatory statements, wholly irrelevant and foreign to its scope, he is not entitled to protection, but otherwise he is afforded absolute immunity. Improper motive, bad faith, or false statement of facts are not material questions for the

reason that no liability arises on account thereof when involved in the exercise of official duty.''

In addition to that case our independent research for adjudications based upon identical facts, discovered the case of Stivers v. Allen, a decision by the Supreme Court of the State of Washington and reported in 115 Wash. 136, 196 P. 663, 664, 15 A. L. R. 245. In that case the defendant was a United States District Attorney for the Northern Division of the Western Federal District of Washington, having, as the court said, ''an official duty in reference to the subject-matter of the defamatory communication.'' At a meeting in his office, wherein plaintiff and Wm. R. Jarrell were present, defendant stated to plaintiff the words upon which his · action against the defendant was based and which were:

'' 'About midnight of May 12 last, or early in the morning of May 13, you were on the fourth floor of the P.-I. Building with copies of the ''no-conscription circular'' in your possession. Now, I want to know where you got them.' ''

Jarrell, the only other person present at the time, ''had * * * a corresponding and like official duty (as that of defendant), being then and there a Secret Service operative in the employ of the Treasury Department of the United States assigned to duty in Seattle, Washington.'' The petition charged that defendant by the alleged slanderous words ''intended to convey the meaning that the said plaintiff had committed a criminal offense against the United States and the crime of seditious conspiracy as defined and denounced in and by sections six (6), thirty-seven (37), and three hundred thirty-two (332) of the Criminal Code of the United States (18 U. S. C. A. secs. 6, 88, 550).''

The court in rendering its opinion eliminated the presence of plaintiff as a material fact in the case, since slander does not lie for words spoken to the plaintiff privately and outside the hearing of third parties. Therefore, it treated the case as if the words were spoken to, or in the presence of, only Jarrell, another officer having similar duties to perform as did defendant, that is, the prosecution of offenders against the criminal and penal statutes of the Federal government. The court then said:

"Viewing the alleged slanderous words as being spoken by respondent to Jarrell, the Secret Service officer, and no one else hearing them—as for present purposes they must be viewed—we think they constitute an absolute privileged communication from respondent to Jarrell."

The court then quoted from the case of Shinglemeyer v. Wright, 124 Mich. 230, 82 N. W. 887, 50 L. R. A. 129, followed by the court saying that there could be found decisions somewhat out of harmony with the Michigan court's opinion, and then said:

"* * * but in so far as our attention has been called to such decisions, and in so far as we have been able to discover by an independent investigation, they all relate to communications made by private citizens to officers touching the question of the guilt of some person of an offense. No decision has come to our notice—and we think there are none—wherein it has ever been held that the expressions of opinion by one officer to or in the sole presence of another, as in this case, are actionable slander under any circumstances."

Subsection (2) of section 61.170, KRS, prescribes that:

"Any sheriff, deputy sheriff, policeman or other peace officer who fails to enforce any provision of KRS 242.010 to 242.990 after receiving information of a violation thereof, or having knowledge of a violation thereof and failing to act thereon, may be indicted for nonfeasance or malfeasance in office, and if convicted shall be fined not less than fifty nor more than two hundred dollars, and the judgment of conviction shall declare the office held by such person vacant."

The sections of the statute therein referred to relate to local option, its adoption, the duties of officers charged with its enforcement, etc., so that the specific subject matter to which the slanderous words herein charged, concerned and related, was one which the statutes of this Commonwealth imposed upon defendant, as well as upon his deputy to whom the words were spoken, the vigorous and vigilant enforcement of the law.

The facts, as we have said, in this case, bring it squarely within those appearing in Judge Ford's opin-

604

ion, and those of the Washington Supreme Court case, and we adopt and approve the rule in those cases as sound, as well as essentially proper under the circumstances, not only because of the position occupied by defendant and the one to whom he made the alleged slanderous communication, but also essential for the enforcement of the local option law, which the Legislature had so mandatorily imposed upon each of them. The testimony of plaintiff and that of his wife as to what occurred at the time of the search had already been admitted by defendant's pleading, i. e., that it was made and liquor not found. But other facts alleged in defendant's answer pointing to the plaintiff's guilt of the charge preferred by him in his communication to his deputy, Taylor, were but vaguely denied, and plaintiff admitted that on another occasion, and perhaps more than one, when his premises were searched he had emptied liquor, stored in his house, into the slop bucket, so as to conceal it from the searching officers.

Under the cited authorities, and confining our conclusions *strictly* to the facts in this case as hereinbefore related, we are of the opinion that the court did not err in peremptorily instructing the jury to return a verdict in favor of defendant.

Wherefore, the judgment is affirmed.