**Shelby LANIER, Jr., Appellant,**

v.

**Jon HIGGINS, Appellee.**

Court of Appeals of Kentucky.

September 25, 1981.

Discretionary Review Denied Dec. 8, 1981.

Fredric J. Cowden, Louisville, for appellant.

Henry A. Triplett, Bennett, Bowman, Triplett & Vittitow, Louisville, for appellee.

Before GANT, VANCE and WILHOIT, JJ.

WILHOIT, Judge.

Shelby Lanier, Jr., a police officer of the City of Louisville, appeals from a summary judgment by the Jefferson Circuit Court dismissing his complaint for slander against Jon Higgins, Chief of Police, and the City of Louisville.

This action arose out of an interview of Chief Higgins which appeared on a Louisville television station. During the course of the interview he was asked questions about race relations within the police department. Chief Higgins responded that they were "deteriorating badly" because of Officer Shelby Lanier whom he stated was "perhaps the worst racist in the Louisville Division of Police" and had "done more to forment [sic] distrust and unrest in the department between officers and in the black community than any other single officer[.]" The Chief also stated that Officer Lanier "has never allowed fact or truth to stand in the way of a good protest or a ridiculous statement" and that "it's a shame that Shelby Lanier should wear a badge[.]" Officer Lanier then brought suit for slander naming Chief Higgins and the City of Louisville [1] as defendants.

In granting summary judgment the trial court held that, because of his official position, Chief Higgins had an absolute privilege to make the statements made in the television interview and that he therefore could not be held liable in a defamation action. In reaching its result, the court relied heavily on *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), which greatly expanded for federal officers the absolute privilege against suit for defamation. As written in that case, privilege as a defense to defamation actions "has in large part been of judicial making[.]" *Id.* at 569, 79 S.Ct. at 1338, 3 L.Ed.2d at 1440. While we accord the greatest respect to decisions of the United States Supreme

---

1. The City of Louisville has been dismissed from this appeal because it was not properly named in the notice of appeal.

Court, we are faced with a question of state law, and it is to the judicial decisions of this Commonwealth which we must look to determine the limits of the defense of absolute immunity. *Thompson v. Huecker*, Ky. App., 559 S.W.2d 488 (1977).

In *Tanner v. Stevenson*, 138 Ky. 578, 128 S.W. 878 (1910), the Court discussed thoroughly the law in Kentucky on the subject as it then stood. It observed that the cases in which absolute privilege applies are few in number and ought not to be enlarged because this "would place in the power of revengeful and unscrupulous persons the right to malign at will those who had incurred their displeasure[.]" 128 S.W. at 881. The Court went on to state that the law holds good character in high esteem and has made it a serious offense wantonly to assault it, recognizing, however, that there are a few instances in which the interest of the public is esteemed more important than that of the individual and occasions when private rights must yield to the public good. As to instances in which the private right would yield to the public good and the publisher of a defamatory statement would be accorded an absolute privilege, the Court held that they are "confined to judicial and legislative proceedings, matters involving military affairs, and communications made in the discharge of a duty under express authority of law by or to heads of executive departments of the state." *Id. See also Jacobs v. Underwood*, Ky., 484 S.W.2d 855 (1972). This holding comported with the Court's prior ruling in *Ranson v. West*, 125 Ky. 457, 101 S.W. 885 (1907), and was followed in *Begley v. Louisville Times Co.*, 272 Ky. 805, 115 S.W.2d 345 (1938), in which the Court applied the absolute privilege to a report by the Adjutant General to the Governor.

The scope of absolute privilege was extended to cover administrative bodies in the exercise of quasi-judicial powers which they are required by statute to exercise. *McAlister & Co. v. Jenkins*, 214 Ky. 802, 284 S.W. 88 (1926). It was also stated in that case that "the rule in this state is that absolute privilege applies wherever the communication is made in discharge of a duty under express authority of law by or to heads of executive departments, provided the libelous communication is pertinent to the inquiry under investigation at the time." 284 S.W. at 91.

In *Catron v. Jasper*, 303 Ky. 598, 198 S.W.2d 322 (1946), the Court again extended the scope of absolute privilege to apply it to a peace officer who, in the course of enforcing the penal laws, uttered an alleged slander to a fellow peace officer also engaged in enforcing the penal laws. The Court made it plain that the result reached there was confined "*strictly* to the facts in this case[.]" 198 S.W.2d at 325. It further cited with approval *Harwood v. McMurtry*, 22 F.Supp. 572 (W.D.Ky.1938), which involved a communication from an Internal Revenue agent to his superior and *Stivers v. Allen*, 115 Wash. 136, 196 P. 663, 15 A.L.R. 245 (1921), which involved a communication from a United States District Attorney to a Secret Service officer. The *Catron* Court, however, in noting that there were many cases which had held that where a civilian speaks to an officer concerning matters within the latter's jurisdiction such communications are not absolutely, but only specially privileged, speculated that "[p]erhaps the same rule might apply where the utterer of the words was an officer whose duties concerned the subject matter of the communication made by him to a private citizen[.]" 198 S.W.2d at 324. Indeed, this would seem to follow from the holding in *Ranson v. West, supra*, that all official communications made by an officer in the discharge of a public duty are conditionally privileged except in those situations in which the case law has clothed the officer with absolute privilege.

Applying the case law to the appeal before us, it is obvious that at the time he made the alleged defamatory statements Chief Higgins was not the head of an executive department of the state nor was he engaged in a judicial or legislative proceeding or in military affairs. He was not involved in a quasi-judicial proceeding, the statements were not communicated to another officer in the course of the performance of their similar duties, nor was the communication made in the discharge of a statutory duty. The appellant's brief does

show that the policy and procedure manual of the Louisville Division of Police provides that a commanding officer has "the authority as well as the responsibility to respond directly to legitimate news inquiries about operations of his command." This is not the equivalent of a statutory duty to answer news inquiries, although it does make it clear that, at the time Chief Higgins was being interviewed, he was engaged in the performance of official duties. Under the circumstances, and in view of the foregoing case law, we believe that Chief Higgins was not clothed with an absolute privilege but rather with a special or conditional privilege. *See also* Restatement (Second) of Torts § 598A (1977).

The public certainly has an interest that officials of government be entitled to exercise their duties unembarrassed by the fear of damage suits arising from acts done in the course of those duties. In that way the officials will be free to administer fearlessly and vigorously the policies of government and to communicate freely with the public. At the same time, the public also has interests that officials act responsibly, that they furnish it with accurate information, and that the good reputations of citizens not be damaged wrongfully. At least until now, the case law in this jurisdiction has found the latter interests to be more compelling in a case such as we have here.

The judgment of the trial court is reversed and this case is remanded for further proceedings.

All concur.