Elmer HELTON, Appellant,

v.

George A. JOPLIN et al., etc., Appellees.

Mrs. James (Maggie) HELTON, Appellant,

v.

George A. JOPLIN et al., etc., Appellees.

James HELTON, Appellant,

v.

George A. JOPLIN et al., Appellees.

Court of Appeals of Kentucky.

June 24, 1955.

Rehearing Denied Sept. 30, 1955.

918

Calvert C. Little, London, for appellants.

Russell Jones, Fritz Krueger, Somerset, Allen Prewitt, Frankfort, for appellees.

MILLIKEN, Judge.

The three actions here involved concern claims for libel arising out of the same newspaper publications. The pleadings in each case are substantially alike, the actions were consolidated for trial and the same evidence heard in all, so that for purposes of this appeal the actions may be treated as one.

The evidence shows that on February 1, 1954, the appellants, plaintiffs below, Mr. and Mrs. James Helton and their son, Elmer, were indicted by the Laurel County grand jury and charged with the grand larceny of a cow. They were arrested by the sheriff and state police on that date and placed in the Laurel County jail. Two days later, on February 3, 1954, the appellees-defendants, George A. Joplin and Mrs. Mae Williams, who as partners own and publish at Somerset, Pulaski County, Kentucky, a weekly newspaper known as "The Commonwealth," caused to be printed and circulated in their newspaper the following article:

Rustlers Get Cow,
Stork Calls on Cow,
Court Problem Looms

"Some cow rustlers near Mt. Victory got more than they bargained for this week when Mr. Stork arrived the day following their theft of a Jersey in Laurel County.

"Elmer Helton and Mr. and Mrs. James Helton, Mt. Victory, were arrested Monday night by the State Police and members from the Sheriff's Office and charged with grand larceny in the theft of a cow. But the cow had given birth to a calf in the meantime. Whether the baby calf will be considered in the theft remains to be seen.

"The Heltons were placed in the Laurel County jail in London as the warrant for their arrest had been issued in Laurel County."

Subsequently the Heltons were tried in Laurel County and acquitted. Following the acquittal, the newspaper, in its issue of May 5, 1954, published the following:

"Heltons Found Not Guilty

"Jim Helton, Elmer Helton and Maggie Helton, Mt. Victory, were found not guilty in Laurel Circuit Court last week of a charge of grand larceny."

"It's surprising how few breaks really deserving people sometimes get."

The last sentence is what is known as a "filler" and was separated from the Helton article by a cutoff line. The paper published without request in three issues the story of the acquittal of the Heltons, the last two times without the filler. Appellees deny that the published statement, "It's surprising how few breaks really deserving people get," referred to appellants.

 In their separate suits for libel against the partners, the Heltons alleged damages as follows: "Both and each of the publications referred to and set out at length in plaintiff's complaint did: * * (c) injured (sic) the plaintiff in his reputation, subjected (sic) the plaintiff to humiliation, shame, contempt, caused (sic) the plaintiff to be ridiculed and socially ostracized, and caused (sic) the plaintiff to suffer loss of public confidence and respect." By reason of the foregoing, each plaintiff asked for compensatory damages in the sum of $15,000. Each asked for a further sum of $5,000 as punitive damages.

The trial court directed a verdict for the appellees-defendants, holding the publications complained of were privileged under KRS 411.060, since it was not proven that they were published maliciously. The Heltons appeal, contending that the article referring to them as "cow rustlers" was libelous per se and that in a publication which is libelous per se malice is presumed.

None of the cases relied on by the appellants holding that charging a person with the commission of a crime involving moral turpitude is libel per se deals with the publication of privileged matter. Publication of certain court documents is privileged by statute, KRS 411.060, which provides:

"* * * The publication of a fair and impartial report or the whole or a synopsis of any indictment, warrant, affidavit, pleading or other document in any criminal or civil action in any court of competent jurisdiction shall be privileged, unless it is proved that it was published maliciously, or that the defendant after request by the plaintiff has failed to publish a reasonable explanation or contradiction thereof, giving the explanation or contradiction the same prominence and space as the original publication, or that the publisher has refused after request by the plaintiff to publish the subsequent determination of the proceeding. This section shall not authorize the publication of any indecent matter."

There is not a word of proof in the record to the effect that the report about the Heltons was published maliciously, or that any of the Heltons requested any explanation or contradiction. On the contrary, it appears that the parties were not acquainted and that the appellees published the fact of the Heltons' acquittal three times. Further, there is no proof that the filler published below the first story of the Heltons' acquittal in any way referred to the article above it. To connect the two items is fanciful. Boyd v. Hutton, 196 Ky. 512, 244 S.W. 880.

In this state of case, it appears to us that the only substantial question is whether "The Commonwealth" article of February 3, 1954, was a "fair and impartial" report of the Heltons' indictment. The only issue that can arise concerning such matter is whether or not the qualified privilege has been exceeded by commentary not in fact fair and impartial. The item and the headline must be read together in determining the effect of the article complained of as being defamatory. 33 Am.Jur., Libel and Slander, par. 88. When that is done in this case, the use of the term "rustlers" seems to us to be sufficiently explained.

Judgment affirmed.