Charles E. PEARCE, M.D., Appellant,

v.

COURIER–JOURNAL & Louisville
Times Company; Mike Huber;
and Sharon LaFraniere, Appellees.

Court of Appeals of Kentucky.

Jan. 11, 1985.

As Modified Feb. 8, 1985.

Frank E. Haddad, Jr., Louisville, for appellant.

Jon L. Fleischaker, Sheryl G. Snyder, Kimberly K. Greene, Virginia H. Snell, Wyatt, Tarrant & Combs, Louisville, for appellees.

Before CLAYTON, LESTER and WILHOIT, JJ.

WILHOIT, Judge.

Dr. Charles E. Pearce appeals from a judgment on the pleadings dismissing his complaint against the Courier-Journal and Louisville Times Company, which publishes the newspapers of the same names, and two of its reporters, Mike Huber and Sharon LaFraniere, for damages arising out of libel, invasion of privacy, and intentional infliction of emotional distress. The complaint was based upon six newspaper articles published a total of nine times.

The appellant's complaint was filed March 10, 1983. On April 1, 1983, the appellees, without answering, filed a motion "pursuant to CR 12 to dismiss the Complaint against them for its failure to state a claim upon which relief may be granted by this Court." On May 27, 1983, the trial court entered a final judgment pursuant to CR 12 dismissing the complaint "with prejudice, for its failure to state a claim upon which relief may be granted." Prior to entry of the judgment, the appellant had filed an amended complaint, and the parties had filed memoranda in support of and in opposition to the motion to dis-

miss. Following entry of the judgment on June 1, 1983, the appellant filed a "supplemental memorandum" in opposition to the motion to dismiss, which was answered by a memorandum filed by the appellees. On June 13, 1983, after considering the appellant's supplemental memorandum, the court entered a "supplemental final judgment" reaffirming its judgment of May 27, 1983.

■ We begin our discussion of the merits of the trial court's action by noting that exhibits and affidavits were filed by the parties and were apparently considered by the court in reaching its conclusion. Although there is nothing in the record to indicate that the court formally converted the motion to dismiss into one for summary judgment, that is the procedural effect of what it did. *See* CR 12.02; *Whisler v. Allen*, Ky., 380 S.W.2d 70 (1964). We shall consequently look to see if there is any issue of material fact in this case and if none, whether the appellees were entitled to a judgment as a matter of law. *See* CR 56.03.

The facts are undisputed that the articles appearing in the *Louisville Times* and the *Courier-Journal* concerning seizure of some of the appellant's records by drug-enforcement officers contain an untrue statement. The articles incorrectly state that an affidavit sworn to by a drug-enforcement officer for a search warrant stated that the appellant had "issued prescriptions for Demerol without trying to find out whether patients needed it." In fact, the affidavit accused the appellant of issuing prescriptions for "controlled substances" without determining the need for them. The return on the search warrant stated that the appellant's "Demerol dispensing Records from 8–24–79 to 1–18–82" had been seized as a result of the search.

■ The common law in this state has long been that a newspaper is privileged to print fair and accurate accounts of judicial proceedings, including those for a search warrant. *See Beiser v. Scripps-McCrae Publishing Co.*, 113 Ky. 383, 68 S.W. 457 (1902). The privilege is not lost if the newspaper fails to print the exact facts so long as what it does print is substantially true. *See Bell v. Courier-Journal & Louisville Times Co.*, Ky., 402 S.W.2d 84 (1966). The articles appear to have been substantially true in that while the affidavit did not mention "Demerol," it is obvious from the judicial records that the authorities were seeking evidence of illegal Demerol prescriptions. In any event, we see no difference in the defamatory effect of a statement which imputes to a physician the illegal prescription of "Demerol" and one which imputes the illegal prescription of "controlled substances," which by statute include such substances as opium and lysergic acid diethylamide. *See* KRS 218A.050 et seq. The inaccuracy in these articles could not have appreciably affected their defamatory result; thus the court did not err in dismissing the libel claim based upon them, *see Plummer v. Commercial Tribune Publishing Co.*, 208 Ky. 210, 270 S.W. 793 (1925), unless they were "maliciously made" as that term is used in KRS 411.060.

To the extent that the *Louisville Times* article subtitled "Once sued in death, now target of a state probe" is alleged by the appellant to defame him by implying that he prescribed excessive or needless drugs, the record before us indicates without factual dispute that this article was an accurate account of proceedings before the Kentucky Board of Medical Licensure and of court proceedings in a civil action against the appellant, with one exception. That one exception is the following statement appearing in the article:

> Another patient, a 76-year-old widow, has told the Times that in 1979 she became addicted while under Pearce's care. [See accompanying story.]

The accompanying story to which readers were directed is one subtitled "An elderly woman's story of the living hell of drugs." This story recounts the statements of Mrs. Hattie Rose Ludwig and of two physicians, other than the appellant, who had treated her.

■ Insofar as this article is an accurate account of judicial and administrative proceedings, then regardless of the falsity or defamatory character of its contents, it is absolutely privileged unless its publication "was maliciously made." KRS 411.060. Unfortunately, we find nothing in the statute explaining what is meant by "maliciously made," and the few cases considering this statute offer little or no guidance. *See, e.g., Helton v. Joplin,* Ky., 281 S.W.2d 917 (1955). Although *Begley v. Louisville Times,* 272 Ky. 805, 115 S.W.2d 345 (1938), was concerned with a publication which would seem to have fallen within the purview of KRS 411.060, that opinion does not consider the statute. That opinion does, however, discuss the public policy consideration which had led to a judicially-created privilege with respect to accurate accounts of public proceedings and the scope of the privilege which affords protection even though the defamatory statement is known by its publisher to be false. It points out, however, that the privilege is lost if the sole purpose of the publication was to cause harm to the person defamed. We conclude that by the enactment of KRS 411.060 in 1936, the General Assembly intended to establish by legislation a rule which was apparently then judicially recognized, at least elsewhere. *See Restatement of Torts* § 611 (1938).

■ The policy consideration giving rise to the rule is that the public should be informed of public proceedings. *See Begley v. Louisville Times Co., supra; Greenfield v. Courier Journal & Louisville Times Co.,* Ky., 283 S.W.2d 839 (1955). Inasmuch as the falsity of the publication or the publisher's knowledge of the falsity does not erase the privilege, we cannot accept the appellant's argument that the statutory words "maliciously made" mean "publication with knowledge of falsity or reckless disregard of falsity." Rather, we think that in the light of then-current legal thought the General Assembly intended that these words be understood as "made solely for the purpose of causing harm to the person defamed." *See Begley,* 115 S.W.2d at 349. We find nothing in the record which can fairly be said to have raised an issue that the publication of this account of the court and administrative proceedings or the previously discussed seizure stories were made solely for the purpose of causing harm to the appellant.

The appellees present a question as to the constitutionality of the "maliciously made" limitation on the privilege contained in KRS 411.060. Because of the result we have reached, we need not consider this. Furthermore, the Attorney General does not appear to have been notified that the constitutionality of this statute was being questioned. *See Blake v. Woodford Bank & Trust Co.,* Ky.App., 555 S.W.2d 589 (1977).

■ With respect to the statement set out above and the accompanying story to which it referred, they do not, of course, fall within the privilege just discussed, and the Supreme Court of Kentucky has rejected the doctrine of "neutral reportage." *See McCall v. Courier Journal & Louisville Times Co.,* Ky., 623 S.W.2d 882 (1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982). The gist of the story concerning Mrs. Ludwig is that the appellant caused this elderly lady to become an impoverished drug addict by injecting her with drugs over a period of time for no valid medical purpose, but for the purpose of taking her money. The natural and probable effect of this story on the mind of the average lay reader would be to cause him to hold the appellant up to hatred, contempt, or disgrace, especially when this story is considered in the context of the article about the public proceedings appearing beside it and under the overall headline, "St. Matthews doctor at center of drug controversy," *See Digest Publishing Co. v. Perry Publishing Co.,* Ky., 284 S.W.2d 832 (1955). The statement and accompanying story imputed to the appellant not only additional medical malpractice, but also additional criminal activity. They were clearly defamatory. *See Register Newspaper Co. v. Stone,* Ky., 102 S.W. 800 (1907).

■ The appellees contend that no allegation was made by the appellant that anything contained in the story about Mrs. Ludwig was false. In this they are mistaken. *See* Paragraph 17 of the Complaint, Record at 7–8. Insofar as the record before us shows, an issue of material fact exists as to the truth of the defamatory aspects of this story.

■ The stories about the judicial and administrative proceedings against the appellant insofar as they deal with matters of public concern and are accurate reports of judicial and administrative proceedings do not seem to us to be proper subjects of the tort of invasion of the right of privacy. *See Bell v. Courier-Journal & Louisville Times Co.*, Ky., 402 S.W.2d 84 (1966); *Restatement (Second) of Torts* § 652D(b) (1977); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). If the story concerning Mrs. Ludwig should be shown by the evidence to have been untrue, then under the principles outlined in Section 652E of the *Restatement (Second) of Torts* (1977), which were apparently approved by the Supreme Court in *McCall v. Courier-Journal & Louisville Times Co.*, *supra*, the appellant's claim for invasion of privacy by placing him in a false light would be maintainable, though he cannot recover for both the defamation and the invasion of privacy. *Id.* at 888–89.

■ Concerning the statement that the appellant's license "will be suspended indefinitely," which was contained in an October 7, 1982 *Louisville Times* article and attributed there to the assistant secretary of the State Board of Medical Licensure, it is undisputed that the statement is factually inaccurate, while it is disputed as to whether the assistant secretary even made such a statement. The appellees successfully argued to the trial court that this statement was also privileged. Based upon the record as it exists at this point, we cannot agree. The statement is apparently not a substantially accurate account of any proceedings before the board, and it is certainly not a substantially accurate account of the judicial proceedings which were the main topic of the article. Instead, it appears to have been an inaccurate reportorial addition to a story recounting those proceedings. *See Restatement (Second) of Torts* § 611 comment f (1977). The statement, even if made, has not yet been shown to have been made by the secretary in the performance of a duty imposed upon him by law, which was the situation in *McAlister & Co. v. Jenkins*, 214 Ky. 802, 284 S.W. 88 (1926), cited by the appellees. *See also Lanier & Higgins*, Ky.App., 623 S.W.2d 914 (1981).

■ In spite of the appellees' argument to the contrary, we are convinced that this statement did add to the "gist or sting" of the story as a whole. Admittedly, without the statement the rest of the story stung the appellant's reputation badly. Nevertheless, the statement inserted what was capable of interpretation by the average lay reader as yet another stinger into the appellant's already wounded reputation, viz, that the Board of Medical Licensure believed the charges against him to be true.

Based upon the principles that we have already discussed, upon remand the trial court should also consider whether a claim for invasion of privacy by placing in a false light would lie as to this statement.

■ At the time that this case was disposed of by the trial court, the opinion of the Kentucky Supreme Court in *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), had not been rendered. The appellees had successfully argued to the trial court that Kentucky did not recognize as a tort the intentional infliction of emotional distress by extreme and outrageous conduct, and especially so in the absence of physical contact. Upon remand, the trial court should consider the appellant's claim on this ground in the light of that case.

Because of the result reached by the trial court, it was not necessary for it to consider the question raised by the parties concerning punitive damages. We shall not consider that question for the first time on appeal.

The judgment of the trial court is reversed insofar as it granted summary judgment against the appellant's claims based upon Hattie Rose Ludwig's story and the reference to it in the accompanying story, and the appellant's claims based upon the statement attributed to the secretary of the licensure board. The judgment is affirmed as to the claims based upon the other stories cited in the complaint. This matter is remanded for further proceedings consistent with this opinion.

All concur.