Jack R. VIGUE, Appellant,

v.

Lieutenant John UNDERWOOD,
Appellee.

No. 2003–CA–000830–MR.

Court of Appeals of Kentucky.

Feb. 6, 2004.

Jack R. Vigue, West Liberty, KY, pro se.

No brief filed.

Before COMBS, JOHNSON and MINTON, Judges.

*OPINION*

JOHNSON, Judge.

Jack R. Vigue, *pro se*, has appealed from an order entered by the Morgan Circuit Court on April 9, 2003, which dismissed his petition for declaration of rights filed pursuant to KRS [1] 418.040. Having concluded that the trial court did not err in dismissing Vigue's petition for declaration of rights, we affirm.

Vigue is an inmate at the Eastern Kentucky Correctional Complex (EKCC) in West Liberty, Kentucky. Vigue was transferred to the Kentucky Department of Corrections from Virginia pursuant to the Interstate Corrections Compact (ICC).[2] On April 6, 2002, Vigue cut his finger on a can while working in the kitch-

---

1. Kentucky Revised Statutes.

2. The ICC, which is codified at KRS 196.610, was adopted by Kentucky in 1970 to "provide for the mutual development and execution of [ ] programs of cooperation for the confinement, treatment and rehabilitation of offend- ers with the most economical use of human and material resources." In sum, the ICC is an agreement between Kentucky and several other states which provides for the exchange and housing of prisoners on a reciprocal basis.

en at the EKCC.[3] Shortly thereafter, Vigue's co-workers, Keith Durrett and Michael Kidwell, informed him that he was bleeding. According to Durrett and Kidwell, Vigue continued working over their protests. Consequently, four cases of corn and five cases of lima beans were discarded due to contamination concerns. Vigue was subsequently fired from his job in the kitchen and charged with "creating or causing a health hazard."

A disciplinary hearing was held on April 10, 2002, at which time the Adjustment Hearing Officer amended the charge against Vigue to the lesser offense of "improper use of or possession of state equipment or material."[4] Vigue was found guilty of this charge and ordered to pay $170.16 as restitution for the vegetables that were discarded. On May 2, 2002, the prison warden concurred with the hearing officer's decision.

On March 19, 2003, Vigue filed a petition for declaration of rights pursuant to KRS 418.040. Vigue contended, *inter alia*, that his due process rights were violated when the correctional authorities failed to comply with the ICC.[5] More specifically, Vigue claimed the hearing officer applied Kentucky disciplinary rules to his disciplinary hearing rather than Virginia disciplinary rules in violation of the ICC. On April 4, 2003, the Department of Corrections filed a motion to dismiss Vigue's petition for declaration of rights and on April 9, 2003, the trial court entered an order dismissing Vigue's petition. The order states, in relevant part, as follows:

> IT IS HEREBY ORDERED that [ ] Petitioner has failed to demonstrate any due process violations. The recognized elements of procedural and substantive due process were present in the institutional disciplinary proceedings at issue. Petitioner is not entitled to have the laws of the Commonwealth of Virginia apply to a disciplinary hearing held in the Commonwealth of Kentucky under the language of either the Interstate Corrections Compact or the implementing contract [citations omitted].[6]

This appeal followed.

Vigue argues on appeal that he has a protected liberty interest in having Virginia disciplinary rules applied to him while he is incarcerated in Kentucky pursuant to the ICC.[7] We cannot agree.

We begin our analysis by setting forth the proper standard of review. Since the

---

3. Vigue was preparing canned vegetables for the evening meal when he was injured.

4. Pursuant to Kentucky Corrections Policies and Procedures (CPP) 15.6, "any violation of a Category III or higher offense" is considered a major violation and "any violation of a Category I or II offense" is considered a minor violation. Creating or causing a health hazard is a Category VI offense, whereas the improper use of or possession of state equipment or material is a Category I offense.

5. Vigue also contended that there was insufficient evidence to support his conviction.

6. On April 4, 2003, the Department of Corrections filed a motion with the trial court requesting permission to file a copy, under seal, of the implementing contract used by Kentucky and other states for transfers of inmates made under the ICC. The motion was granted on April 9, 2003.

7. Vigue's *pro se* appellate brief is rather convoluted and his arguments are difficult to discern. Nevertheless, a thorough review of the record indicates that Vigue is attempting to raise a due process argument based on the ICC. Interestingly, however, Vigue expressly disavows any reliance on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He contends that "[t]he merits of [his] case rest solely on the fact that state law was violated[.]" Vigue also appears to argue that the Kentucky Department of Corrections lacked the authority under the ICC to enter a "final determination" with respect to his disciplinary proceedings.

trial court apparently considered matters outside of the pleadings, *i.e.*, the implementing contract used by Kentucky and other states for facilitating the transfer of inmates under the ICC, in arriving at its decision to dismiss Vigue's petition for declaration of rights, we must treat the ruling as a summary judgment.[8] The standard of review governing an appeal of a summary judgment entered in this Commonwealth is well-settled. We must determine whether the trial court erred in concluding that there was no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law.[9] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] In *Paintsville Hospital Company v. Rose*,[11] the Supreme Court of Kentucky held that for summary judgment to be proper the movant must show that the adverse party cannot prevail under any circumstances. The Supreme Court has also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respon-

dent to produce evidence at the trial warranting a judgment in his favor."[12]

A protected liberty interest may arise from two sources—the Due Process Clause itself and state law or regulations.[13] The liberty interest asserted by Vigue in the case *sub judice*, *i.e.*, the right to have Virginia disciplinary rules applied to him while he is incarcerated in Kentucky, is based on his interpretation of the ICC. In sum, Vigue contends that the ICC created a liberty interest to which he is entitled by mandating that the sending state's disciplinary rules apply to proceedings involving a transferred inmate. The thrust of Vigue's argument centers on two provisions contained in the ICC. Specifically, Vigue cites Article IV(e) of the ICC which provides, *inter alia*, that "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."[14] In addition, Vigue cites Article IV(f) of the ICC which provides:

Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state.... In the

---

8. *See, e.g., Pearce v. Courier Journal & Louisville Times Co.*, Ky.App., 683 S.W.2d 633, 635 (1985). *See also* 6 Philipps, *Kentucky Practice*, CR 12.02, cmt. 9 (5th ed.1995). "On a motion to dismiss on this ground the Rule recognizes that matters outside the pleadings may be presented by affidavit or otherwise. It is within the discretion of the court whether or not this extraneous matter shall be considered, but if the court does not exclude it, the motion shall be treated as one for summary judgment under Rule 56." *Id.*

9. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

10. Kentucky Rules of Civil Procedure (CR) 56.03.

11. Ky., 683 S.W.2d 255, 256 (1985).

12. *Steelvest Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991).

13. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); and *Bills v. Henderson*, 631 F.2d 1287, 1291 (6th Cir. 1980).

14. *See* KRS 196.610.

event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made.... In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state.

Vigue asserts that pursuant to the above-quoted provisions the Kentucky Department of Corrections was required to apply Virginia prison disciplinary rules to his disciplinary hearing.[15] We cannot agree.

Article IV(e) of the ICC also provides:

All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and *shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution* [emphasis added].

Moreover, the implementing contract used by Kentucky and other states for transfers of inmates made under the ICC provides that the receiving state shall "supervise" and "maintain proper discipline and control" over the transferred inmates. Specifically, paragraph 16 of the implementing contract states that "[t]he receiving state, as agent for the sending state, shall have the physical control over and power to exercise disciplinary authority over all inmates from sending states." In addition, paragraph 17 of the contract provides that while in the custody of the receiving state transferred inmates "shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed."

While this issue is one of first impression in Kentucky, several other jurisdictions have dealt with similar challenges under the ICC. When faced with an almost identical factual scenario, the United States Court of Appeals for the Eighth Circuit in *Stewart v. McManus*,[16] declined to read into the ICC or the implementing contract a requirement that Kansas' disciplinary rules be applied to an inmate subject to disciplinary proceedings while confined in an Iowa penitentiary. The *Stewart* Court set forth its reasoning as follows:

Although the Compact provides that the sending state has a right to conduct hearings in the receiving state and apply its law in situations when the inmate may be entitled to hearings by the law of its state, the Compact and the contract provide that inmates are to be "treated equally," and that *disciplinary* authority shall be exercised by the *receiving* state.... We are satisfied that neither the statutory nor contractual provisions mandate that [the sending state's] disciplinary rules and regulations be applied to [the inmate's] disciplinary proceedings [conducted] in the [receiving state's] penitentiary [emphases original].[17]

---

15. As previously discussed, Vigue also contends that the Kentucky Department of Corrections lacked the authority to enter a "final determination" with respect to his disciplinary proceedings.

16. 924 F.2d 138 (8th Cir.1991).

17. *Id.* at 141. *See also Jaben v. Moore,* 788 F.Supp. 500, 503–04 (D.Kan.1992) (rejecting claim that ICC required application of sending state's custody-classification guidelines); *Cranford v. State,* 471 N.W.2d 904, 905 (Iowa Ct.App.1991) (holding that ICC did not require application of sending state's disciplinary rules); *Glick v. Holden,* 889 P.2d 1389,

We are persuaded that this reasoning is applicable in the case *sub judice.* As stated by the Utah Court of Appeals in *Glick,* *supra:*

> The following policy concerns [ ] mandate the conclusion that [the receiving state] should not be required to apply each sending state's policies and procedures under the ICC. The purpose of the ICC is to develop and execute "programs of co-operation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." To achieve this purpose, the ICC must facilitate inmate transfers, not create obstacles to them. Requiring [a receiving state] to learn and apply policies and procedures of every state from which [it] has received an inmate under the ICC would create administrative burdens that would likely lessen [a receiving state's] desire to accept inmates from other states. This would create obstacles to interstate transfer, thus thwarting the ICC's purpose [citation omitted].[18]

Based on the foregoing reasons, the order of the Morgan Circuit Court is affirmed.

ALL CONCUR.

---

1393 (Utah Ct.App.1995) (denying prisoner's claim that he was entitled to benefit of policies and procedure of sending state); and *Daye v. State,* 171 Vt. 475, 769 A.2d 630, 636 (2000) (holding that Vermont inmates were not entitled, under the ICC, to the same visitation policy in out-of-state correctional facilities that applied in Vermont facilities).

18. *Glick,* 889 P.2d at 1394, n. 6.