NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0793n.06
Filed: November 13, 2007

No. 06-5383

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BRYAN C. JOLLEY,

      Plaintiff-Appellant,

v.

RONNIE D. HARVELL,
individually and in his official
capacity as an officer of the Calvert
City, Kentucky Police Department;
CALVERT CITY, KENTUCKY,

      Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____/

BEFORE:    SUHRHEINRICH, GIBBONS, and COOK, Circuit Judges.

      **SUHRHEINRICH, Circuit Judge.**   Plaintiff Bryan C. Jolley ("Jolley") appeals from the order of the district court granted summary judgment to Defendants Ronnie Harvell ("Harvell") and Calvert City, Kentucky in this § 1983 action based on an allegedly illegal arrest. For the following reasons, we **AFFIRM**.

**I.  Background**

      At approximately 2:00 a.m. on October 6, 2002, Defendant Officer Ronnie D. Harvell, a police officer of the Calvert City, Kentucky Police Department, saw a 1996 Honda stop at four-way stop intersection, for what the officer characterized as a "prolonged stop," approximately thirty seconds. Because it was dark out, Harvell could not see either a license plate or temporary license

tag on the car. After following the car for approximately 1.1 miles, Harvell signaled the vehicle to stop as it pulled into the parking lot of a Minit Mart.

Jolley, who was then nineteen years old, was driving the Honda. Two other young men in their late teens were in the vehicle, Travis Konrad and Alton Cunningham. They were apparently driving to the Minit Mart to purchase snacks.

Upon stopping Jolley's car, Harvell activated the in-car camera. Harvell then approached the vehicle and asked for Jolley's license and proof of insurance, which Jolley provided. Harvell then asked Jolley to step outside to the rear of the car after allegedly smelling marijuana. Harvell also asked to search the automobile. Jolley initially consented but then changed his mind. Harvell then asked Jolley to perform some field sobriety tests, including the "one-leg stand" and the "walk-and-turn" test. Harvell also performed the Horizontal Gaze Nystagmus ("HGN") test on Jolley.[1] According to Harvell's affidavit, Jolley failed the one-leg stand test because, after instructing Jolley to raise one leg off the ground and to count out loud to number 30, Jolley only counted to five before putting his foot down, and stating, "I can't do it, I'm too shaky."[2] Harvell stated that Jolley failed the walk-and-turn test, because he took only three steps, failing to follow Harvell's instructions to

---

[1]Procedures for the HGN test include holding an object such as a finger 12-15 inches in front of the subject's nose and having him following it with his eyes.

[2]Procedures for the one-leg stand test include initiating the test by giving verbal instructions, accompanied by demonstrations. First, the officer is to instruct the subject to stand with his feet together and arms down at the sides. The officer should demonstrate. The officer should instruct the subject to, upon command, lift one leg approximately six inches from the ground, arms at his side, and while holding the position, count out loud for thirty seconds (one thousand one, one thousand two, etc.).

take a full nine steps.[3]  Harvell noted that Jolley passed the HGN, which tests for alcohol use only, but added that he did not consider this test in his determination of probable cause because he thought Jolley was under the influence of marijuana.

After these tests, Harvell decided to arrest Jolley for Driving Under the Influence ("DUI") because he thought Jolley was under the influence of marijuana.[4]  The "Uniform Citation" reported that Harvell stopped the vehicle due to a prolonged stop at the corner of Fifth and Park streets and that he could not see the temporary license tag.  Finally, Harvell reported that he smelled burned marijuana as he approached the vehicle, and that Jolley failed the one-leg stand and walk-and-turn tests.

Jolley and his friends denied that they had smoked marijuana.  Urine and blood tests found no alcohol or drugs in Jolley's system.  A vehicle search revealed no marijuana.

Three days after his arrest, the local newspaper in Calvert City, The Lake News, ran a front-page story reporting the details of Jolley's arrest. On March 12, 2003, the DUI charge was dismissed on the Commonwealth's motion.  On March 26, 2003, at Jolley's request, The Lake News ran a follow-up article reporting the drug test results and that the DUI charges had been dismissed.

An administrative hearing regarding the incident was conducted on November 26, 2002.  In an executive order issued on March 11, 2003, the mayor of Calvert City found "that the sobriety tests

---

[3]Procedures for the walk-and-turn test include having the subject assume the heel-to-toe stance, place his hands at his side, and then take nine heel-to-toe steps down the line, turn around, and then take nine heel-to-toe steps back.  The officer demonstrates the test to the suspect, but takes only two or three steps, not the full nine.

[4]Harvell charged Jolley with driving under the influence of a drug, first offense, Ky.Rev. Stat. 189A.101(5)(a).  Harvell did not charge Jolley with either driving under the influence of alcohol or driving under the influence of a combination of alcohol and a drug. On the uniform citation, Harvell lined out "alcohol" and circled "drug."

were poorly administered by Officer Harvell," and recommended to the chief of police that Harvell and other officers receive training on how to administer field sobriety tests, "in order to avoid such situations in the future." The mayor also found that Harvell's decision to allow passenger Konrad to drive Jolley's car from the scene represented poor judgment. Harvell subsequently attended such a training course.

Jolley brought suit under 42 U.S.C. § 1983 on October 3, 2003 against Harvell, in his individual and official capacities, and Calvert City, alleging they violated his Fourth and Fourteenth Amendment rights. He also brought several pendent state claims, including malicious prosecution, defamation, as well as negligent supervision against Calvert City.

On January 21, 2005, the district court granted Defendants' motion for summary judgment, concluding as a matter of law that Harvell had probable cause to arrest Jolley and therefore no constitutional violation could be proven. Specifically, the district court found that Jolley failed two of the three sobriety tests administered by Harvell, namely the one-leg-stand and the walk-and-turn, and passed only the HGN test. The court concluded that the "totality of the circumstances" supported the probable cause determination given Jolley's failure of two field sobriety tests plus Harvell's observations of the odor of marijuana and Jolley's bloodshot eyes. The court stated that the dispute over the marijuana odor did not matter because the videotape confirmed Harvell's report that Jolley failed the two tests. Alternatively, the district court held that "[e]ven if the question of probable cause were a closer one, there is no question that the probable cause determination made by Harvell would be well within the range of discretion that would allow him qualified immunity from suit for that determination."

On January 31, 2005, Jolley filed a motion to vacate. The district court denied the motion on February 8, 2006, but altered its reasoning. The court acknowledged that a genuine issue of fact existed as to whether Harvell smelled marijuana when he approached Jolley's car, and also decided, after re-viewing the videotape, that Jolley did not fail the walk-and-turn test. Nonetheless, the district court again found as a matter of law that probable cause existed for Harvell to arrest Jolley because Jolley "unequivocally failed the one-leg stand test. Officer Harvell's training indicated that if an individual failed to complete the one-leg stand test, there was a 65% likelihood that he was intoxicated. This fact alone is sufficient to allow a reasonable police officer to determine that it was likely that Mr. Jolley had violated KRS 189A.010." The court added that "[i]n hindsight, it appears that this belief was mistaken in light of the negative results of Mr. Jolley's blood and urine tests. However, it is not in hindsight that the Court must evaluate Officer Harvell's decision; rather it is on the basis of the facts known to him at the time of the arrest." The court noted that "it is also not relevant to the probable cause determination" that no marijuana was later found in the vehicle.

Jolley presents three arguments on appeal. First, he contends that the district court erred in concluding that Harvell had probable cause to arrest him for driving under the influence. Second, and third, he argues that the district court erred in dismissing his claim for malicious prosecution and defamation, respectively.

## II. Analysis

This Court reviews a district court's grant of summary judgment de novo. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

A district court's finding of probable cause is reviewed de novo. *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001).

**A.**

To prove a claim under 42 U.S.C. § 1983, the plaintiff must establish: (1) that he was deprived of a right secured by the Constitution or laws of the United States, (2) by a person acting under color of state law. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir. 2007).

Arrest without probable cause violates the Fourth Amendment. *See Beck v. Ohio*, 379 U.S. 89, 90 (1964); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires only the probability of criminal activity, not some type of "prima facie" showing. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983); *see also Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (same). "[P]robable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

Jolley argues that the district court erred in concluding that Harvell had probable cause to arrest Harvell for DUI because (1) he did not fail the one-leg stand field sobriety test, and that even if he did, (2) that fact alone did not establish probable cause to arrest him for driving under the

-6-

influence of marijuana, nor did it (3) support a finding of probable cause to arrest under the totality of the circumstances.

## 1.

The "DUI/Standardized Field Sobriety Testing Course Basic Training" manual used during the period Harvell underwent his initial police officer training provides four behaviors that "are the most likely to be observed in someone with a BAC [blood alcohol content] above 0.10:" (1) swaying while balancing, (2) using one's arms for balance, (3) hopping, and (4) putting a foot down. One point is assigned for each of the four behaviors, and the subject receives four points if he cannot perform the test or puts his foot down three or more times. If the subject receives two or more points out of a possible four, the subject is considered intoxicated.

Jolley acknowledges that he correctly received one point because he put his foot down after counting to the number five and stated that he could not complete the test due to being cold. Jolley asserts that the officer thereafter failed to correctly administer the rest of the test because he failed to "give instructions to pick the foot up again and continue counting" per the manual. Thus, Jolley maintains that he should not have been awarded an additional point.

We reject this argument. Jolley does not dispute that he was able to maintain his balance for only five seconds before telling Harvell "I can't do it." The instruction manual specifically states that the test if failed when the suspect (1) puts his foot down three or more times, or (2) cannot perform the test. Given Jolley's statement, Harvell made a reasonable judgment call in the field in concluding that there was a probability that Jolley had committed a crime.

Jolley contends that he did not fail the one-leg-stand field sobriety test because he was too cold and shaky. However, Harvell in his affidavit stated that he was not instructed to provide the subject allowances for being nervous or cold. In any event, on the night in question, the temperature was approximately fifty degrees–hardly a cold night. In short, Jolley failed the one-leg stand due to his admitted inability to perform the test. And coupled with the fact that Jolley sat at a stop sign at 2:23 a.m. for an inordinate amount of time (thirty seconds), Harvell clearly had probable cause to arrest Jolley.

**2.**

Next, Jolley contends that, assuming he failed the one-leg stand test, Harvell did not arrest him for driving under the combined influence of alcohol and marijuana, but rather for driving under the influence of marijuana. Jolley contends that this could not support a finding of probable cause for driving under the influence of alcohol because the manual actually states if an individual shows two or more clues or fails to complete the one-leg stand test, about 65% of such subjects have a BAC above 0.10. Thus, Jolley contends that the district court's statement that there was a 65% likelihood that Jolley was intoxicated due to marijuana was wrong because the foregoing percentage was merely a prediction of BAC and offered no prediction of impairment due to marijuana use.

Although the pertinent provision does not provide guidance as to marijuana, it cannot be said that there is insufficient evidence to support a determination of probable cause that Jolley committed a crime. *See United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981) (stating that probable cause does not require "proof beyond a reasonable doubt," but simply evidence to establish that it is "more likely than not" that a crime has been committed). A prudent person, or one of reasonable caution, making a judgment call in the field, could have reasonably concluded that Jolley was impaired by

some intoxicant to such a degree that he was incapable of safely operating a motor vehicle. A reasonable officer could have interpreted a failure of the one-leg stand to indicate some form of impairment–whether marijuana or alcohol–such that Jolley could not safely drive a car. The lengthy delay at the intersection, at 2:00 a.m., further buttresses our conclusion that Harvell's decision to arrest Jolley was supported by probable cause at the time Harvell made the decision to arrest.

**3.**

Jolley also objects to the district court's conclusion that the totality of the circumstances supported Jolley's arrest. In his brief on appeal, Jolley notes the undisputed facts both supporting and not supporting probable cause. Before the traffic stop, Jolley stopped at a traffic stop for approximately thirty seconds; on the flip side, Jolley properly stopped his automobile, made a proper turn, drove within the speed limit and properly stopped the vehicle in the Minit Mart parking lot. After the traffic stop until the time of the arrest, Jolley allegedly failed to complete the one-leg stand test and admittedly stated he could not do it. On the other hand, he had no difficulty in providing his driver's license, proof of insurance card and stepping out of the vehicle. Also, he explained that his delay at the stop was to defrost his windows, and he denied marijuana use. Further, the video reflects that Jolley's speech was distinct and not slurred, that his thinking and reasoning were intact, and that his gait was normal. In addition, he was wearing only a short-sleeved shirt, and explained that he could not do the one-leg-stand because he was cold and shivering. Finally, the video demonstrates that he passed the walk-and-turn tests.

Thus, Jolley contends that a reasonable and prudent officer, competent and properly trained in DUI detection, would not have found probable cause to arrest for a DUI violation involving marijuana based upon only "a young man's unhesitating explanation for the 30-second stop at the

intersection of defrosting window; 'kind of bloodshot' eyes, when young men had been smoking cigarettes in a car at 2:23 in the morning; and failure to complete the one-leg-stand test . . . [although] wearing only a short-sleeved shirt in cool weather, putting his foot down and explaining that he could not perform the test because of being cold and shivering." Appellant's Br. At 25-26. Jolley further claims that Harvell was incompetent, as reflected by the fact that: (1) Harvell failed Jolley on the walk-and-turn test based on only one clue of incorrect number of steps, when at least two clues were required; and (2) he allowed Konrad to drive Jolley's automobile away from the scene without first checking Konrad's driver's license and administering field sobriety tests to him.

This argument must be rejected. As noted above, the issue is whether, under an objective standard, there was probable cause to justify Jolley's arrest at the time of the arrest. Although there are certainly facts that militate against a finding of probable cause, there are sufficient facts to support the arrest. We would be hard-pressed to conclude that no reasonably prudent officer would have made the same decision, especially when balanced against the potential consequences of an incorrect call had Jolley ultimately proven to be impaired. *See Pierson v. Ray*, 386 U.S. 547, 555 (1967) (stating that "[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does"). A drunk driver is a severe threat to the safety of others. Jolley's ultimate innocence is irrelevant. *See id.* (holding that a police officer who arrests someone with probable cause is not later liable for false arrest because the subject was proved innocent); *cf. Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.").

**4.**

-10-

Defendants argue that even if the district court erred in determining that Harvell had probable cause to arrest Jolley, it properly determined that Harvell was entitled to qualified immunity. State actors are entitled to qualified immunity unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," then qualified immunity is inapplicable. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). However, if "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley*, 475 U.S. at 341.

As the district court observed, Harvell's conduct is well within this range. Although he may have made some mistakes, for the reasons just discussed, he properly found probable cause. The district court did not err in affirming on this alternative basis.

**B.**

Jolley also argues that the district court erred in dismissing malicious prosecution claim. He points out that he pleaded separate causes of action for malicious prosecution under both the Fourth and Fourteenth Amendments to the United States Constitution and under Kentucky law as a pendent state claim.

A malicious prosecution claim is not available under the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994) (plurality opinion). Although there is some dispute in this Circuit whether a malicious prosecution claim is valid under the Fourth Amendment, *see McKinley v. City of Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005) (discussing cases), *cert. denied*,

-11-

126 S. Ct. 1026 (2006); *Holz v. City of Sterling Heights*, 465 F. Supp. 2d 758, 769-70 (E.D. Mich. Nov. 21, 2006) (same); *but see Gregory v. City of Louisville*, 444 F.3d 725, 747-51 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 962 (2007), it does not matter here because "it nonetheless remains firmly established that where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." *McKinley*, 404 F.3d at 444-45 (and cases cited therein). Want or lack of probable cause is also a required element of a malicious prosecution claim under Kentucky law. *See Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981) (setting forth elements). Jolley's arrest for driving under the influence of marijuana was supported by probable cause. Thus, the implementation of criminal charges against him cannot be seen as an unreasonable prosecutorial action.

## C.

Lastly, Jolley argues that the lower court erred in dismissing his claim for defamation. Jolley claims that Harvell's actions constituted defamation when he reported to 911 that field sobriety tests were administered to Jolley after the smell of burned marijuana was detected, that Jolley was arrested for DUI after failing such tests, and that Jolley was then lodged in the Herman Ford Detention Center. Specifically, Jolley asserts that even if Harvell would otherwise be entitled to absolute immunity for the defamatory statements about Jolley contained in the newspaper article, no protection exists here because Defendants failed to plead any facts supporting an affirmative defense of absolute immunity in their answer.

On the contrary, Defendants pled the defense in their answer. (J.A. 46-50.) Additionally, the Harvell's statements reported that Jolley had been *arrested* on such charges, which was true. Therefore no action for defamatory action should lie. *See Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981) (listing elements of offense to include defamatory language);

*see also Bell v. Courier-Journal & Louisville Times Co.*, 402 S.W.2d 84, 87 (Ky. Ct. App. 1966) (holding that truth is a complete defense to an action for libel); *see also Pearce v. Courier Journal & Louisville Times Co.*, 683 S.W.2d 633, 635 (Ky. Ct. App. 1985) (holding that the common law privilege of newspapers to print fair and accurate accounts of judicial proceedings "is not lost if the newspaper fails to print the exact facts so long as what it does print is substantially true;" citing *Bell*).

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

**JULIA SMITH GIBBONS, Concurring.** I concur in the conclusion that Harvell is entitled to qualified immunity but disagree that probable cause existed for Jolley's arrest. While it is doubtless correct that there ordinarily would be probable cause to arrest an individual whose eyes are bloodshot and who pauses longer than might be expected at a stop sign and fails to complete a one-leg-stand test, I am convinced, after reviewing the tape of this arrest, that no reasonable officer could have believed that Jolley was under the influence of marijuana or alcohol. Jolley's demeanor and speech during his rather protracted exchange with Harvell are so strongly suggestive of sobriety as to exclude a reasonable conclusion that Jolley was under the influence of an intoxicant. I see nothing in the record, however, that would deprive Harvell of qualified immunity for his mistaken and unreasonable conclusion that probable cause existed. Harvell's mistakes do not rise to the level of incompetence required to strip him of the protection of qualified immunity, and there is no indication in this record that he knowingly violated the law. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*per curiam*) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'").

As to Jolley's other claims, I agree with the majority's resolution of the defamation claim. Its disposition of the malicious prosecution claim is correct as well, under its determination that there was probable cause for Jolley's arrest. While I disagree about the probable cause determination and would affirm the dismissal of the malicious prosecution claim for reasons other than those cited by the majority, a lengthy discussion of the other issues relating to this claim in a separate opinion would serve no useful purpose.

For these reasons, I concur in the result only.