RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHAEL J. KINLIN,

      *Plaintiff - Appellant,*

    *v.*

SHAWN KLINE,

      *Defendant - Appellee.*

No. 13-3874

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland
No. 1:12-cv-00581—Dan A. Polster, District Judge.

Argued: April 29, 2014

Decided and Filed: May 21, 2014

Before: GILMAN, GIBBONS, and STRANCH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jonathan E. Rosenbaum, Elyria, Ohio, for Appellant. Jennifer S. M. Croskey, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Jonathan E. Rosenbaum, Elyria, Ohio, for Appellant. Jennifer S. M. Croskey, Morgan A. Linn, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. On the evening of March 11, 2011, Ohio State Trooper Shawn Kline observed Michael Kinlin change lanes immediately after signaling, a maneuver that Trooper Kline determined could not be made safely because it positioned Kinlin's car too closely between the car in front of him and the car behind him. This caused Trooper

1

Kline to pull Kinlin over for the traffic violation.  Trooper Kline then asked Kinlin how much he had had to drink.  Kinlin admitted that he had consumed two beers earlier that evening.  The admission caused Trooper Kline to request that Kinlin submit to a field sobriety test.  When Kinlin refused, Trooper Kline arrested him.

Kinlin sued, claiming that Trooper Kline violated Kinlin's civil rights because the trooper lacked probable cause to either stop Kinlin's vehicle or to arrest him.  The district court decided as a matter of law that Kinlin had suffered no civil rights violation because probable cause did in fact exist for both the stop and the arrest.  It therefore determined that qualified immunity shielded Trooper Kline from suit despite the fact that a subsequent breathalyzer test showed that Kinlin was not legally intoxicated.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

Most of the relevant events in this case are captured on a video recording taken by a camera installed in Trooper Kline's cruiser.  On March 11, 2011, at approximately 9:00 p.m., Trooper Kline was on patrol on Lake Avenue in Elyria, Ohio when he observed the left-turn signal being activated on a silver Nissan in the right lane just as the car moved into a narrow space between two cars in the left lane of the four-lane street.  Trooper Kline followed the Nissan for approximately 30 more seconds until the driver of the Nissan signaled to left turn.  After completing the turn himself, Trooper Kline activated his lights and siren and pulled the Nissan over.

Trooper Kline got out of his cruiser and approached the Nissan.  He informed the driver, later identified as Kinlin, that he had stopped Kinlin because Kinlin had nearly cut off the car behind him and had "cut left of center" just before the intersection.  Kinlin responded that the car behind him had "about two feet" of space when Kinlin pulled in front.  Trooper Kline noted, however, that this was less than one car's length and thus unsafe.  He also reiterated that he had observed the Nissan cross the street's center line.  Kinlin responded that he did not know what Trooper Kline was talking about with respect to crossing the center line.  Trooper Kline then

asked Kinlin how much alcohol Kinlin had consumed that evening.  Kinlin answered that he had drunk "two beers."

When Trooper Kline instructed Kinlin to "step out," Kinlin complied, walking behind the Nissan and in front of Trooper Kline's cruiser.  Kinlin appeared somewhat disheveled—his tie was loose and dangling below his neck—but he did not appear off-balance.  Trooper Kline ushered Kinlin just out of view of his cruiser's camera and began instructing Kinlin with regard to a field sobriety test.  Kinlin said in response:  "I'm not doing a test.  I just told you I had two beers.  I'm not drunk."

Trooper Kline then informed Kinlin that he was under arrest.  Kinlin replied:  "You're kidding me."  Trooper Kline responded:  "You know what?  You don't want to take my test?" Kinlin again responded that he would not submit a field sobriety test.  Trooper Kline then said: "One more chance, you want to take my test?"  Kinlin responded a third time that he would not take the test.  Trooper Kline then said, "You're under arrest.  Turn around."  He also said:  "I can smell alcohol."  Kinlin continued to protest that he had consumed only two beers.  Trooper Kline responded that he could smell alcohol and also noted that Kinlin's eyes were glassy.

Kinlin finally agreed to submit to a field sobriety test while Trooper Kline was patting him down.  But Trooper Kline informed Kinlin that, "at this point, we're going to go off of your test results."  The test, administered later that evening, indicated that Kinlin had a blood-alcohol content of .012%, well below Ohio's legal limit of .08%.

B.      **Procedural background**

Kinlin sued under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.  He claimed that Trooper Kline violated his right to be free from unreasonable searches and seizures because Trooper Kline did not have probable cause to initiate the traffic stop and because Trooper Kline did not have probable cause to arrest Kinlin after Kinlin refused the field sobriety test.

Both parties moved for summary judgment.  Trooper Kline argued that Kinlin suffered no constitutional violation because there was probable cause for both the stop and the subsequent arrest.  Moreover, Trooper Kline asserted that qualified immunity protected him from suit

because his arrest of Kinlin did not violate any clearly established law to the contrary.  Kinlin, in turn, argued that the evidence Trooper Kline cited was insufficient as a matter of law to provide probable cause for either the stop or the subsequent arrest.

The district court agreed with Trooper Kline.  It held that "video [evidence] confirms that Trooper Kline had probable cause to stop Kinlin for making an unsafe lane change."  The district court also held that Trooper Kline had probable cause to arrest Kinlin because Kinlin (1) made an unsafe lane change, (2) smelled of alcohol, (3) admitted to consuming alcohol, and (4) thrice refused a field sobriety test.

Kinlin now appeals.  On appeal, he makes two arguments.  First, he contends that Trooper Kline lacked probable cause for the initial traffic stop because Kinlin's crossing of the center line is not visible on the cruiser's video recording and because Kinlin's lane change could have been legal.  Kinlin's second argument is that Trooper Kline did a poor job of weighing the exculpatory evidence before making the arrest.  Trooper Kline responds that Kinlin's unsafe lane change gave rise to probable cause to perform the traffic stop, and that the traffic violation, together with the odor of alcohol, Kinlin's admission that he had consumed alcohol, and Kinlin's refusal to submit to a field sobriety test, provided probable cause to arrest Kinlin.

## II.  LEGAL STANDARDS

### A.      Summary judgment

"We review the district court's grant of summary judgment on qualified immunity grounds *de novo*." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013).  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  The court must draw all reasonable inferences in favor of the nonmoving party. *Burgess*, 735 F.3d at 471.

In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court addressed the role of video evidence at the summary-judgment stage of a case. The Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

*Scott*'s holding is twofold. First, *Scott* stands for the proposition that witness accounts seeking to contradict an unambiguous video recording do not create a triable issue. *Id.* at 380–81. Second, *Scott* reaffirmed the holdings of *Matsushita* and *Anderson* that, in disposing of a motion for summary judgment, a court need draw only *reasonable* inferences in favor of the nonmoving party; it need not construe the record "in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video recording." *Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007); *see also Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (holding that the court should "view[] the facts in the light depicted by the videotape," and that "[t]he central issue is whether the evidence . . . is so one-sided that one party must prevail as a matter of law") (internal quotation marks omitted).

## B.     Qualified immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 134 S. Ct. 3, 4 (2013) (internal quotation marks omitted). "Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity." *Burgess*, 735 F.3d at 472. This court has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident." *Id.* If the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established. *See id.* ("We can consider these steps in any order.").

## C.     Probable cause

Although "state law defines the offense for which an officer may arrest a person, . . . federal law dictates whether probable cause existed for an arrest." *Kennedy v. City of Villa*

*Hills*, 635 F.3d 210, 215 (6th Cir. 2011).   The Supreme Court in *Whren v. United States*, 517 U.S. 806, 809–10 (1996), set forth the relationship between probable cause and a traffic stop as follows:

> The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision.  *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1395, 59 L. Ed. 2d 660 (1979); *United States v. Martinez–Fuerte*, 428 U.S. 543, 556, 96 S. Ct. 3074, 3082, 49 L. Ed. 2d 1116 (1976); *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578, 45 L. Ed. 2d 607 (1975).  An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances.  As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.  *See Prouse*, *supra*, at 659, 99 S. Ct., at 1399; *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2d 331 (1977) (*per curiam*).

And probable cause for an arrest "quite familiarly, depends on 'whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Whether probable cause exists in a particular situation, however, is often difficult to determine:

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.  *See* [*Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)]; *Brinegar* [*v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)].  We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," *ibid*. (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L.Ed.2d 238 (1979).

*Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

### III. TRAFFIC STOP

Trooper Kline had probable cause to stop Kinlin's car because the video recording indisputably shows that Kinlin executed a sudden lane change that did not leave sufficient space between the car ahead of him and the car behind him. This is true regardless of Trooper Kline's actual motivation for making the traffic stop. *See United States v. Garrido*, 467 F.3d 971, 977–78 (6th Cir. 2006), where the court set forth the relevant law as follows:

> "A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). Accordingly, a roadside detention is lawful so long as the officer has probable cause to believe that the motorist has violated the traffic laws. *See United States v. Burton*, 334 F.3d 514, 516 (6th Cir. 2003) ("The Fourth Amendment . . . permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop.").

Moreover, "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Indeed, "[p]robable cause requires only the probability of criminal activity, not some type of 'prima facie' showing." *Jolley v. Harvell*, 254 F. App'x 483, 486 (6th Cir. 2007).

Section 4511.33(A)(1) of the Ohio Revised Code provides that "[a] vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." In *United States v. Akram*, 165 F.3d 452 (6th Cir. 1999), this court analyzed the relationship between Ohio Revised Code § 4511.33(A)(1) and Ohio Revised Code § 4511.39(A), the latter section requiring that a driver give "an appropriate signal in the manner hereinafter provided" before changing lanes. This court concluded that "Section 4511.39 of the Ohio code requires the use of a turn signal when changing lanes, regardless of whether a driver complies with § 4511.33(A)'s general admonition to be safe." *Akram*, 165 F.3d

at 455. The driver's failure to signal therefore gave the officer probable cause to stop the vehicle. *See id.*

As relevant to this case, *Akram* holds that the failure to use a turn signal is a wholly separate offense from an unsafe lane change. This necessarily implies that the use of a turn signal does not negate probable cause to find that the driver in question changed lanes in an unsafe manner. Kinlin's argument that he signaled his lane change therefore does not negate Trooper Kline's determination that Kinlin nonetheless failed to ascertain that the lane change could be made safely.

More important for the present case, the video recording clearly shows that Trooper Kline had a reasonable basis to conclude that Kinlin had violated Ohio Revised Code § 4511.33(A)(1). The video shows that Kinlin executed the lane change into a tight space between two vehicles, causing the driver of the vehicle behind him to brake. Indeed, as the district court noted, Kinlin acknowledged that he was "close" to the vehicle behind him, stating: "[Y]ou can see it on the video." Kinlin also admitted at the time that he left only "about two feet" of space. Whether Kinlin actually "ascertained that [his lane-change] movement [could] be made with safety," *see* Ohio Rev. Code § 4511.33(A)(1), is irrelevant because the video leaves no doubt that Trooper Kline had a reasonable basis upon which to conclude that the movement was unsafe. Trooper Kline thus had probable cause as a matter of law to stop Kinlin's vehicle.

## IV. ARREST

The district court also concluded that Trooper Kline was entitled to qualified immunity because he had probable cause, as a matter of law, to arrest Kinlin for driving under the influence of alcohol. Ohio law prohibits "operat[ing] any vehicle . . . within this state, if, at the time of the operation . . . [t]he person is under the influence of alcohol." Ohio Rev. Code § 4511.19(A)(1)(a). The district court explained that "Trooper Kline observed Kinlin make an unsafe lane change[,] . . . noticed the odor of alcohol[,] . . . and through Plaintiff's own admission, was informed [that Kinlin] had been drinking." Furthermore, Kinlin thrice refused to take a field sobriety test. Based upon these facts, the district court concluded as a matter of law that Trooper Kline had probable cause to believe that Kinlin had violated Ohio Revised Code § 4511.19(A)(1)(a).

On appeal, Kinlin does not dispute these facts, but instead argues that "[t]he arresting officer cannot myopically focus upon a few facts that support the finding of probable ca[u]se while disregarding all other reasonably observable facts that militate against a finding of probable cause." He contends "that this is exactly what Trooper Kline did." In support, Kinlin notes that he did not commit myriad other traffic violations, was not slurring his speech, and was steady on his feet.

Kinlin's argument misses the mark. His basic contention is that Trooper Kline failed to adequately consider the evidence in Kinlin's favor, which is to say that Trooper Kline allegedly did not follow the proper process before arresting Kinlin. Kinlin's argument is essentially a due process argument under the Fourteenth Amendment. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (noting that Radvansky's argument that he was arrested without proper procedural protections is a due process argument). This court has established, however, that the Fourteenth Amendment does not apply in evaluating whether an officer has probable cause for an arrest because "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007) (quoting *Radvansky*, 395 F.3d at 313); *see also Radvansky*, 395 F.3d at 313 ("[T]he Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment.").

And in the Fourth Amendment context, "[i]f the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." *See Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). In other words, the issue is not whether Trooper Kline considered any evidence that Kinlin was sober, but whether, despite the exculpatory evidence, Trooper Kline made an objectively reasonable determination that there was probable cause to believe that Kinlin was driving under the influence.

This court recently addressed probable cause related to drunk driving in *Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012). The *Green* court held that failing three field sobriety tests, standing alone, was insufficient to support a finding that probable cause existed as a matter of law to arrest the driver for drunk driving. *Id.* at 866–67. Indeed, these factors alone did not even support a reasonable belief that probable cause existed. *Id. Green* therefore implies

that the failure to submit to a field sobriety test, without more, does not provide probable cause to believe that a driver has been driving under the influence of alcohol. But this court has not previously addressed whether refusing to submit to a field sobriety test can serve as a factor in support of a finding of probable cause when other incriminating factors are present.

On the appellate level, only the Tenth and Eleventh Circuits appear to have considered the import of a driver's refusal to submit to a field sobriety test when combined with indicia of alcohol consumption. Both circuits have held that refusal to submit to a field sobriety test, combined with evidence of alcohol consumption, could give rise to probable cause sufficient to arrest a driver for driving under the influence of alcohol. *See Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) ("A prudent officer could reasonably conclude from Plaintiff's refusal to participate in a field sobriety test coupled with the observation of several indicators of excessive alcohol consumption that Plaintiff was under the influence of alcohol."); *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006) ("A prudent officer could conclude from a refusal to take a test, coupled with the smell of alcohol, that the driver had in fact been drinking.").

We find the approach of our sister circuits persuasive, especially as applied to the indisputable facts known to Trooper Kline, which gave him probable cause as a matter of law to arrest Kinlin. As the district court noted, Kinlin does not dispute that he (1) made a lane change with only two feet of clearance, (2) smelled of alcohol, (3) admitted to consuming alcohol, and (4) thrice refused a field sobriety test. This evidence, viewed as a whole, distinguishes this case from *Green*, where the driver denied having consumed any alcohol and no smell of alcohol was present.

Kinlin counters that he was not driving erratically beyond the sudden lane change, was steady on his feet, and did not slur his words. These facts are indeed part of the totality of the circumstances, but are insufficient in our opinion to vitiate probable cause. Furthermore, even if these facts did vitiate probable cause, Kinlin cites no authority requiring Trooper Kline to credit these facts over the facts supporting probable cause to arrest Kinlin for driving under the influence of alcohol. Absent some such authority, the clearly-established-law prong of qualified immunity also protects Trooper Kline from liability.

Kinlin's proposed analysis would turn a totality-of-the-circumstances determination into a requirement that an officer have clear and convincing evidence before making an arrest. The Fourth Amendment, however, requires only probable cause in light of the totality of the circumstances. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 249 (6th Cir. 2010) ("An officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest. . . . [A] suspect's satisfactory explanation of suspicious behavior is certainly a factor in determining whether probable cause exists.") (alterations in original) (internal quotation marks omitted). "[S]ubsequent evidence that plaintiff had not been drinking does not vitiate the probable cause established by what the officer observed and the results of the field sobriety tests," *id.* at 248 (internal quotation marks omitted), or, as in the present case, by the refusal to submit to a field sobriety test.

## V. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.