RENDERED: OCTOBER 31, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

**FINAL**

**DATE** 11/25/19 JAF

2018-SC-000257-MR

ASIEL IRAOLA-LOVACO           APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.       HONORABLE KIMBERLY N. BUNNELL, JUDGE
NO. 16-CR-00202

COMMONWEALTH OF KENTUCKY           APPELLEE

## OPINION OF THE COURT BY JUSTICE VANMETER

## AFFIRMING

Asiel Iraola-Lovaco was convicted of three counts of Assault in the

Second Degree and one count of DUI First Offense. He entered a guilty plea to

one count of misdemeanor Leaving the Scene of an Accident. Iraola-Lovaco

now appeals as a matter of right[1] from the Fayette Circuit Court's final

judgment imposing the jury's recommended sentence of twenty years'

imprisonment. After extensive review of the record and applicable case law, we

hold that no palpable error resulted from the arresting officer's testimony

referring to the field sobriety investigative procedures he administered as

"tests" and stating that Iraola-Lovaco "failed" them. Furthermore, the trial

---

[1] Ky. Const. § 110(2)(b).

court properly denied Iraola-Lovaco's motion for a jury instruction on the lesser-included offense of Assault in the Fourth Degree. Accordingly, we affirm.

## I. Factual and Procedural Background.

On December 27, 2015, at approximately 11 p.m., Iraola-Lovaco was speeding and drove up on the curb of Winchester Road in Lexington, progressed down the sidewalk, and struck three individuals with his vehicle. Then Iraola-Lovaco's vehicle struck a utility pole. Iraola-Lovaco drove away from the scene. Shortly thereafter, Officer Bellamy of the Lexington Police Department responded to a call of a vehicle blocking traffic and found Iraola-Lovaco sitting in the driver's seat of his car with the engine running. No one else was in the car with him. The vehicle's front end was smashed in and blood and vomit covered the windshield. Off. Bellamy asked Iraola-Lovaco if he was ok and Iraola-Lovaco responded that he was, and that he had struck a utility pole. Off. Bellamy smelled alcohol on Iraola-Lovaco's breath and observed that his eyes were bloodshot and watery. Off. Bellamy read Iraola-Lovaco his *Miranda* rights before administering five field sobriety tests ("FSTs"); Iraola-Lovaco failed four of them and was placed under arrest. Iraola-Lovaco stated that he only had one beer and did not think he had hit any people. All three victims were transported to the hospital. Two of them lost a leg and all required extensive medical treatment.

Off. Bellamy transported Iraola-Lovaco to the Emergency Room for a blood draw. His blood was drawn at approximately 1:48 a.m. on December 28, 2015 and his blood alcohol content ("BAC") was 0.078. Calculating back from

2

that time, evidence was presented at trial that Iraola-Lovaco's BAC at the time of the crash approximately two hours earlier was between 0.105-0.116.

A jury convicted Iraola-Lovaco of three counts of Second-Degree Assault and DUI First Offense. The jury hung on the charge of Leaving the Scene of an Accident and the parties negotiated a plea agreement for a misdemeanor on that charge. The jury recommended a sentence of twenty years' imprisonment, which the trial court imposed. This appeal followed.

## II. Analysis.

On appeal, Iraola-Lovaco raises two claims of error, only one of which he preserved below. We do not find merit in either claim.

### a. *No Palpable Error Resulted from Officer Bellamy's Testimony About the Field Sobriety "Tests" He Conducted.*

Iraola-Lovaco asserts that Off. Bellamy's description of the field sobriety events as "tests" and that Iraola-Lovaco "failed the tests" improperly lent the investigative procedures the gravitas of scientific weight for which no scientific opinion foundation was laid, and therefore should not have been admitted under KRE[2] 702.[3] In other words, Iraola-Lovaco claims that use of the terms "test," "pass" and "fail" lent Off. Bellamy's lay witness testimony an "aura of

---

[2] Kentucky Rules of Evidence.

[3] KRE 702 governs testimony by experts and provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case."

3

scientific validity" implying reliability and transforming the testimony into expert witness testimony. Notably, Iraola-Lovaco does not assert that Off. Bellamy was not qualified to conduct the FSTs or that the proper procedures were not employed. Nor does he dispute that Off. Bellamy's testimony about his observations of Iraola-Lovaco was properly admitted. Rather, Iraola-Lovaco's sole claim of error pertains to the nomenclature used by Off. Bellamy to describe the field sobriety events. Because Iraola-Lovaco did not seek to exclude this testimony at trial, or object to its introduction, his claimed error is unpreserved and we will review it for palpable error only under RCr[4] 10.26 which provides:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"'Manifest injustice' is 'error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Davidson v. Commonwealth*, 548 S.W.3d 255, 261 (Ky. 2018) (quoting *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009)).

Iraola-Lovaco contends that the palpable error standard is met since this case was a "close call" in terms of intoxication and Off. Bellamy's testimony was crucial in establishing that Iraola-Lovaco was intoxicated. Iraola-Lovaco emphasizes that the Commonwealth did not proceed under a DUI *per se* theory

---

[4] Kentucky Rules of Criminal Procedure.

(when the accused's blood or breath-alcohol concentration was 0.08 or higher),[5] but rather under an impairment theory. During his testimony, Off. Bellamy conceded that Iraola-Lovaco was not "falling down drunk" and that he was looking for "little things" to determine intoxication. As a result, Iraola-Lovaco maintains that allowing Off. Bellamy to use such words as "test," "pass," and "fail" to describe the field sobriety events amounts to palpable error.

Kentucky law is clear that evidence of FSTs is admissible and that officers observing a defendant's driving and physical condition may offer opinion testimony that the defendant was intoxicated.

> The "primary function" of field sobriety tests is to provide an officer with "reasonable grounds . . . to justify" an arrest and further investigation. *Hayden v. Commonwealth*, 766 S.W.2d 956, 957 (Ky. App. 1989). Nevertheless, "evidence of impaired ability" is often presented at trial "through the description of the performance of field sobriety tests which measure psycho-motor functions, hand-eye coordination and reaction time." *Id.* . . . In terms of proof, "an officer who has observed a defendant's appearance and behavior is competent to express an opinion as to his degree of intoxication and as to his ability to operate a motor vehicle safely." *Kidd v. Commonwealth*, 146 S.W.3d 400, 403 (Ky. App. 2004) (citing *Hayden*, 766 S.W.2d at 957). There is no requirement to prove that field sobriety testing is scientifically reliable. *Bridgers v. Commonwealth*, No. 2005-CA-1690-DG, 2007 WL 121846, at *2 (Ky. App. Jan. 19, 2007) (citing *Kidd*, 146 S.W.3d at 402). "[O]fficers observing a defendant's driving and physical condition may offer both law and expert opinion testimony that a defendant was intoxicated." *Id.* (citing *Commonwealth v. Rhodes*, 949 S.W.2d 621, 623 (Ky. App. 1996)). Officers do not have to personally observe direct evidence of impaired driving ability. *Jolley v.*

---

[5] KRS 189.520.

*Harvell*, No. 5;03-CV-236-R, 2006 WL 319174, at \*2–3 (W.D. Ky. Feb. 8, 2006), aff'd, 254 F. App'x 483 (6th Cir. 2007).

*United States v. Collins*, No. 6:12-CR-59-KKC-HAI-8, 2018 WL 7075291, at \*4 (E.D. Ky. Nov. 21, 2018); *see also Kidd*, 146 S.W.3d at 403 ("Evidence that a driver's speech was slurred, that his blood-shot eyes did not react to light, and that he could not perform the simple physical tasks involved in a field sobriety test sufficed to establish that his *ability* to drive was impaired[.]").

In the case at bar, Off. Bellamy testified that he administered five field sobriety tests, four of which Iraola-Lovaco failed. He stated that three of the FSTs are routinely conducted to determine one's level of intoxication, and he conducted two additional tests. He stated that the purpose of an FST is to allow the officer to determine if one is under the influence of alcohol or drugs. He testified at length about Iraola-Lovaco's performance on the tests, described the portions of the tests that Iraola-Lovaco failed, and offered his opinion that based on his training and experience, Iraola-Lovaco was under the influence.

Iraola-Lovaco asserts that FSTs are not scientific tests and notes differing lines of thought throughout various states on the proper use of these terms in DUI proceedings. In support of his position, he cites to *State v. Beltran-Chavez*, 400 P.3d 927, 943 (Or. App. 2017) (holding that "in order for testimony regarding whether defendant 'passed' or 'failed' the FSTs to be admissible, the state needed to lay a proper foundation"), and *State v. Meador*, 674 So. 2d 826, 833 (Fla. Dist. Ct. App. 1996) (holding that "[r]eference to the exercises by using terms such as 'test,' 'pass,' 'fail,' or 'points,' however, creates a potential

6

for enhancing the significance of the observations in relationship to the ultimate determination of impairment, as such terms give these layperson observations an aura of scientific validity. Therefore, such terms should be avoided to minimize the danger that the jury will attach greater significance to the results of the field sobriety exercises than to other lay observations of impairment[]").

However, we find the Kansas Supreme Court's analysis on this issue more persuasive:

> [W]here officer testimony does not link test performance with a specific level of intoxication, the mere use of the term "test" or an indication by the officer that the defendant failed to perform the tests adequately and, therefore, "failed" the test does not lend scientific credibility to the test results. There is only a semantic difference between "field sobriety test" and "field sobriety exercise" or between "failing a test" and "being unable to perform an exercise adequately." An officer must be permitted to relate the activities a suspected drunk driver was asked to perform and to indicate that certain deficiencies in the performance of these activities indicated that the driver was intoxicated. A juror is not likely to mistake the purpose of a driver standing in the street on one foot while counting to 30 or walking heel-to-toe for 18 steps on a straight line after being stopped by a law enforcement officer. To this end, it is appropriate for the officer to testify that field sobriety tests were administered and that, based upon the officer's training and experience, the driver failed those tests. *It is impermissible to take the additional step of equating a level of certainty or probability to the officer's opinion or to correlate a driver's performance with a specific BAC level.*

State v. Shadden, 235 P.3d 436, 453–54 (Kan. 2010) (citation omitted).

Here, Off. Bellamy did not equate a level of certainty or probability to his opinion that Iraola-Lovaco was intoxicated, or correlate Iraola-Lovaco's performance on the FSTs with a specific BAC level. Rather, Off. Bellamy testified that based on his training, experience, and personal observations,

7

Iraola-Lovaco's performance on the FSTs led Off. Bellamy to opine that he was intoxicated. *See Burton v. Commonwealth*, 300 S.W.3d 126, 140 (Ky. 2009) ("[P]olice officers and lay witnesses have long been permitted to testify as to their observations of a defendant's acts, conduct and appearance, and also to give an opinion on the defendant's state of impairment based upon those observations.") (citation omitted). We do not believe that Off. Bellamy's use of the words "test," "pass" and "fail" to describe the FSTs and Iraola-Lovaco's performance renders his testimony inadmissible or rises to the level of palpable error, especially given the overwhelming evidence presented against Iraola-Lovaco at trial.[6] Because Iraola-Lovaco's claim fails to meet the standard for palpable error, reversal on this basis is unwarranted.

### b. A Jury Instruction on Fourth-Degree Assault Was Not Warranted.

Iraola-Lovaco claims the trial court erred by denying his request for a jury instruction on the lesser-included offense of fourth-degree assault. We review whether a trial court erred by not giving an instruction that was allegedly required by the evidence for an abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

---

[6] An eyewitness saw Iraola-Lovaco come flying down Winchester Road, engine revving, and witnessed the accident; another witness saw Iraola-Lovaco's damaged vehicle driving down the street after the accident; another witness observed Iraola-Lovaco's damaged vehicle smoking and traveling fast down Leestown Road, where Iraola-Lovaco's vehicle was eventually found blocking traffic; eyewitnesses and police officers observed that the front of the vehicle was covered in blood and vomit; Iraola-Lovaco was found in the vehicle with the engine running; no one else was in the vehicle; Off. Bellamy described Iraola-Lovaco's eyes as bloodshot and watery and testified that he could smell alcohol on him; Iraola-Lovaco admitted to having consumed one beer; and Iraola-Lovaco's blood drawn approximately two hours after the accident revealed a BAC of 0.078.

Kentucky law is clear that in a criminal trial,

> the trial court is obligated to instruct the jury on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony. This obligation extends to lesser-included offenses and affirmative defenses, but is dependent upon there being sufficient evidence to warrant the giving of an instruction.

*Turner v. Commonwealth*, 544 S.W.3d 610, 625 (Ky. 2018) (citations omitted).

In other words, "[a]n instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury could have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Commonwealth v. Day*, 983 S.W.2d 505, 508 (Ky. 1999); *see also* KRS[7] 505.020(2)(a) (a lesser-included offense is "established by proof of the same or less than all the facts required to establish the commission of the offense charged").

The parties agree that fourth-degree assault is a lesser-included offense of first and second-degree assault. The issue is whether the evidence presented at trial supported an instruction on fourth-degree assault, which requires proof that the defendant "intentionally or wantonly causes physical injury to another person; or [w]ith recklessness he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." KRS 508.030. "Assault in the fourth degree is a Class A misdemeanor." *Id.*

Conversely, first and second-degree assault require the following:

*KRS 508.010, Assault in the first degree*
(1) A person is guilty of assault in the first degree when:

---

[7] Kentucky Revised Statutes.

9

(a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

(2) Assault in the first degree is a Class B felony.

*KRS 508.020, Assault in the second degree*

(1) A person is guilty of assault in the second degree when:

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

(2) Assault in the second degree is a Class C felony.

Iraola-Lovaco argues that while it may have been a hard sell to the jury, it is possible that a jury could have believed the injuries suffered by the three victims in this case did not constitute serious physical injury. He further maintains that the jury could have believed that he acted recklessly when he drove, especially if the jury believed that he was not intoxicated to the point where he was legally impaired.

"Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(15). Here, the evidence showed that all three victims suffered serious physical injury. Two of the victims had to have a leg amputated, which unquestionably amounts to a prolonged impairment of health and prolonged disfigurement for both men.

The victim who did not have to have his leg amputated suffered a leg fracture, a cervical fracture, a blood clot in his lung and swelling to his brain when he presented at the emergency room. This victim had to have surgery after the accident in which a bar, pins, and screws were put in his leg to repair the break. He resided at Cardinal Hill for rehabilitation for two weeks after surgery. He testified that he still has pain because of the leg fracture, now has a limp, and is unable to return to work. Undeniably, all three victims suffered serious physical injury from this accident; any suggestion to the contrary is not well taken.

Moreover, Iraola-Lovaco's assertion that the jury could have believed he was not legally impaired when he hit the victims, and thus his conduct was merely reckless, is also refuted by the evidence. The evidence established that Iraola-Lovaco was legally intoxicated when he struck the three victims (his BAC was between 0.105-0.116), he was speeding and drove up on the sidewalk when he struck them, and he left the scene of the accident after striking them. Iraola-Lovaco's conduct was beyond reckless, and thus an instruction on fourth-degree assault was unwarranted.

### III.   Conclusion.

For the foregoing reason, the judgment of the Fayette Circuit Court is affirmed.

All sitting. All concur.

11

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General